## Richmond.

TOWN OF WEST POINT v. BLAND AND OTHERS.

March 21, 1907.

Absent, Cardwell, J.

1. DEDICATION—*How Manifested—Case at Bar.*—In order to constitute a dedication to public use there must be an unmistakable intention to appropriate the land for the use and benefit of the public. The intention to dedicate is the all-important fact on the part of the land owner. It may be manifested by words or acts, and may be express or implied. Indeed, a dedication may be made in every conceivable way by which the intention of the owner can be manifested. But, however manifested, the acts or declarations should be unequivocal and decisive, showing a positive and unmistakable intention on the part of the owner to permanently abandon the property to the public. In the case in judgment, the acts relied on to show a dedication do not measure up to this standard.

2. DEDICATION BY CORPORATIONS—*Acts of Agents.*—No agent of a corporation, not even its president or general manager, can dedicate the land of the company to a public use unless authorized by its board of directors.

3. DEDICATION—*Mere Use by Public—License.*—Where neither pubilc nor private interests have been acquired on the faith of a supposed dedication, the simple use by the public of a supposed street, although long continued, will be regarded as a mere license revocable at the pleasure of the owner.

Appeal from a decree in chancery of the Circuit Court of King William county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*T. H. Edwards* and *H. R. Pollard,* for the appellants.

*H. I. Lewis* and *Isaac Diggs,* for the appellees.

BUCHANAN, J., delivered the opinion of the Court.

The appellees brought their suit in equity, asking to have the appellant, the Town of West Point, a municipal corporation, perpetually enjoined from interfering with or in any wise disturbing them in the use and enjoyment of a certain parcel of land lying in the said town south of First street, and situated between the Mattaponi river on the east, York river on the south, and Terminal Hotel on the west. The bill alleged that the complainants were the fee simple owners of the land in question, and that they and those under whom they claim had held undisputed possession of the same for more than fifty years.

The answer of the Town admitted that the complainants were the joint owners in fee simple of the land as described in their bill, except as to the western boundary. It denied that the land was bounded on the west by the Terminal Hotel property, but alleged that it was bounded on that side by the eastern line of E street, which had been projected and dedicated to the public from First street to the river front, and that the fence which it had directed to be removed (the immediate cause of this litigation) was built across that street by the complainants.

The issue thus presented was, whether the land in controversy was a public highway or street.

In most controversies of this kind the principal question to be decided has been, as in this case, whether the land or place in controversy has been dedicated by the owner or owners to the use of public travel, and if so whether the same has been accepted for such purpose. The principles by which these questions are to be determined have been pretty well settled in the numerous cases which have been before the courts.

"In order to constitute a dedication," as was said by this court in *Harris' Case,* 20 Gratt. 833, 837, "there must be an

intention to appropriate the land for the use and benefit of the public. The intention, the *animus dedicandi,* is the principle of the doctrine of dedication. The acts and declarations of the landowner indicating such an intention must be unmistakable in their purpose and decisive in their character to have that effect." *Talbott* v. *R. & D. R. Co.,* 31 Gratt., pages 688, 689; *Bunting* v. *Danville,* 93 Va. 200, 204, 24 S. E. 830, and cases cited; *Gate City* v. *Richmond,* 97 Va. 337, 33 S. E. 615; Washburn on Easements (2d Ed.) 180.

A dedication is not required to be made by deed or other writing, but may be effectually and validly made by acts or verbal declarations. It may be express or implied. It may be made in every conceivable way by which the intention of the party can be manifested. *Bunting* v. *Danville, supra;* Washburn on Easements, *supra;* Elliott on Roads & Streets, 90, 92. But in whatever way made, it must be unequivocally and satisfactorily proved.

To secure and make certain the title to real estate has been among the chief objects of the laws of all civilized communities. Generally the law has surrounded the transfer of title to, or interest in, land with certain solemnities and formalities. And while, in the case of public highways and streets, from the nature of the case, a dedication may be shown by acts or declarations, they must be of such a public and deliberate character as makes them generally known and not of doubtful intention. Ownership of land once had is not to be presumed to have been parted with; but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention on the part of the owner to permanently abandon his property to the specific public use. If they are equivocal, or do not clearly and plainly indicate an intention to permanently abandon the property to the public, they are not sufficient to establish a case of dedication. *Harris Case, supra,* 837; *Talbott* v. *R. & D. R. Co., supra; Bunting* v. *Danville, supra; Gate City* v. *Richmond,*

*supra; Holdone* v. *Cold Spring,* 21 N. Y. 477; Washburn on Easements, 180.

It appears that some time prior to the year 1856, a corporation known as the West Point Land Company was chartered and acquired title to a tract of land embracing the land in controversy, located at the point where the York river is formed by the union of the Mattaponi and Pamunkey rivers. In that year the land company caused its land to be platted, laid off in lots and streets, and a map thereof made by John M. Daniel. In the year 1870 the town of West Point, "as the same has been heretofore laid off into lots, streets and alleys," by the West Point Land Company, was incorporated. In the same year the town council adopted the survey and map of the town made by Daniel as the survey and plan of the town, and had it recorded in the clerk's office of the County Court of King William county, under the provisions of section 1, chapter 54 of the Code of 1860.

It is admitted that by the map of Daniel, E street does not extend south of First street, but it is insisted that when the map was made there were, and had been for many years prior thereto, public highways passing over the land of the West Point Land Company and terminating at the river front at or near where E street, if extended, would touch the river. There is no record evidence of the establishment of any public highway over the land in controversy, or of the working of the same as such; and while there is some evidence that boats took on and put off goods and passengers at or near where E street, if extended, would reach the river, prior and subsequent to the incorporation of the town, there is no evidence that there was a public road located upon the land in controversy or worked as such, or that there ever was a well defined way over it. On the contrary the evidence tends strongly to show that the whole land claimed by the appellees and described in their bill was, until within a few years before this litigation, unenclosed and treated as a common by the public, over which they drove or

traveled as they pleased to reach the river at any point they wished. It is clear, we think, that the town fails to show that prior to its incorporation the land in controversy had been dedicated by the owners or accepted by the county authorities as a public road.

It is contended by the town, even if this be so, that after its incorporation the land in controversy was dedicated by its owner, the West Point Land Company, as a street, and accepted as such by the town. In the books of the treasurer of that company there is the following memorandum: "July 6, 1871. Wm. D. Pollard, Dr., to the land fund, for the purchase of the land, rights, privileges, ways and extensions of the land into the waters of the Mattaponi, York and Pamunkey rivers, lying on the east side of First street, and extending from the Mattaponi to the Pamunkey river, excepting the land laid off for the streets D and E extending through the same, $500.00"

This land seems not to have been fully paid for until the year 1876, when the purchaser received a conveyance. What the terms of that deed were does not appear. Pollard, under whom the appellees claim, conveyed to John B. Davis, who conveyed in the year 1880 to Charles L. Pearson. These deeds were recorded in the clerk's office of the County Court of King William county. The records of that office were destroyed by fire in the year 1885. The terms of the deed of the West Point Land Company to Pollard and of his deed to Davis are not shown, but in the deed from Davis to Pearson, which was re-recorded, the land is described as follows: "All that tract or parcel of land situate, lying and being in the town of West Point, county of King William, state of Virginia, and bounded on the north by First street, and on the east by the Mattaponi river, on the south by York river, and is the same land conveyed to the said John B. Davis by W. D. Pollard and to said Pollard by the West Point Land Company, deeds for which are duly recorded in the clerk's office of King William County Court." In the subsequent deeds under which the appellees

derive title, there is no reservation or exception of the land in controversy for the purposes of a street, and the whole land conveyed is assessed for taxation.

The memorandum made on the books of the treasurer of the West Point Land Company is not sufficient evidence, if evidence at all, to establish an intention on the part of the land company to dedicate the land in controversy as a street, still less to show that it was so dedicated. Unless authorized by the directors of the land company, its agents, even the president or general manager, could not dedicate its land to public uses. 10 Cyc. 927; *Stow* v. *Wyse,* 7 Conn. 214, 18 Am. Dec. 99; *Hast* v. *Railroad Co.,* 52 W. Va. 396, 401, 44 S. E. 155. The record does not show that the directors themselves dedicated the lot or authorized any of the company's agents to do so. Neither does it show such acts or declarations on the part of the West Point Land Company and its successors in title, under whom the appellees claim, as indicate clearly an intention on their part to appropriate the land in controversy for the benefit of the public. It is true they have permitted the public to go over it and the lands of which it is a part without objection in going to and from the rivers upon which it fronts. The user of the public, however, has not been confined to the narrow strip of land in controversy, but extended until very recently to all the tract owned by the appellees. It does not appear that any public or private interests have been acquired upon the faith of the supposed dedication. Where that is the case the mere user by the public of the supposed street, although long continued, should be regarded as a mere license, revocable at the pleasure of the owner. *Harris Case, supra,* 840. For we know, as was said by Judge Burks in *Talbott* v. *R. & D. R. Co., supra,* "that the individual owners of property are not apt to transfer it to the community, or subject it to the public servitude, without compensation, and such donation is not to be readily inferred."

We are of opinion that the acts relied on in this case to show

an intent to dedicate are not unmistakable in their purpose and decisive in their character, and do not establish such intent with that degree of certainty and clearness required in such cases. This being so it is unnecessary to consider the question whether or not the acts relied on as an acceptance by the town would have been sufficient to have shown an acceptance had it been in fact dedicated.

We are of opinion that there is no error in the decree complained of, and that it must be affirmed.

*Affirmed.*