Syllabus.

## Wytheville.

### LYNCHBURG TRACTION & LIGHT CO. v. GUILL.

#### June 13, 1907.

1. NEGLIGENCE—*How Charged—Declaration.*—Negligence, as a general rule, is a conclusion of law from facts sufficiently pleaded, and the office of a declaration is to inform the defendant of the case which he has to meet, so that he may have a reasonable opportunity to prepare and make his defense. It is not enough to say that the plaintiff was injured, and that the injury resulted from the careless and negligent conduct of the defendant; but the facts relied on to establish the negligence of the defendant, for which he is to be held liable, should be stated with reasonable certainty. The declaration should state sufficient facts to enable the court to say, on demurrer, whether, if the facts stated are proved, the plaintiff is entitled to recover. More general averments of negligence are not sufficient.

2. DEDICATION—*Acceptance—City Streets—Roads.*—The intention to dedicate a street in a city, or a road in the country, may be shown in any way by which intention may be manifested. The acceptance of the dedication may, in the case of streets, be shown by the acts of corporation officers, but the acceptance of a road, in order to impose upon the public the duty of keeping it in order, must appear as a matter of record, though a formal acceptance is not necessary. It is sufficient if the record of the proper tribunal shows other acts whereby the road is claimed as a public one.

3. HIGHWAYS—*Evidence—Burden of Proof—Street Railways.*—In an action to recover damages from a street car company for an injury negligently inflicted on a traveller on an alleged public highway, the burden is on the plaintiff to show that the *locus in quo* was a public highway.

4. TRIAL—*Argument of Counsel—Doubtful Suggestions.*—It is far better for counsel to content themselves with asking a verdict of the jury based upon the law and the evidence, without suggestions of a nature which might imperil an otherwise righteous judgment.

Error to a judgment of the Circuit Court of the city of Lynchburg in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The declaration in this case is in the following words and figures, to-wit:

"Virginia,

"In the Circuit Court for the County of Campbell.

Second February Rules, 1906.

"John Dudley Guill, who sues by John Davis Guill, his father and next friend, complains of the Lynchburg Traction & Light Company, a corporation, of a plea of trespass on the case for this, to-wit: That heretofore, to-wit: On or about the 21st day of November, 1905, the said defendant was the owner and operator of a certain street railroad, lying and being in part within the said County of Campbell, and along one of the public streets, roads and highways of said county, and between said city and the place known as Virginia Christian College, near to the City of Lynchburg, which said street railroad was operated by means of electricity, and that whilst operating the same the said defendant so carelessly, recklessly, negligently and improperly managed its cars that by reason of its carelessness and negligence one of its cars ran and struck with great force upon and against the plaintiff, who was then and there upon said street, road or highway, whereby his left arm was greatly broken, bruised, cut, fractured, crushed, wrenched and mangled, so that the said arm had to be amputated above the elbow. And the plaintiff was otherwise greatly cut, bruised, maimed and lamed, and thereby became and was sick, sore, lame and disordered, and so continued for a long

time, to-wit, hitherto, during all of which time he suffered great bodily pain and mental anguish; was prevented from transacting his ordinary affairs and business, and lost large gains and profits thereby, and especially by the loss of his said arm, his means of making and earning a living were and are greatly impaired, and his injuries are permanent and lasting; and so that by reason of the premises he was obliged to lay out and expend a large sum of money, to-wit, the sum of $500.00, in and about endeavoring to be cured of his said injuries, and further he is greatly and permanently injured, maimed and disfigured, all of which was caused wholly and entirely by and through the carelessness and negligence of the said defendant as above set forth.

"And for this, also, to-wit: That heretofore, to-wit, on the 21st day of November, 1905, in the said County of Campbell, and in the night time of that day, the said plaintiff was then and there a passenger upon one of the cars on the street railroad, which was owned and operated in its capacity as a common carrier of passengers by the said defendant, and thereby it became and was the duty of the said defendant to care for the protection of the plaintiff and to prevent him from being injured, as far as human care and foresight could go, and the plaintiff, a young man about nineteen years of age, was then and there helplessly intoxicated and unable to take care of himself, or understand the dangers to which he might be exposed, a fact which the defendant, through its agents and servants in charge of said car well knew, or in the exercise of due care ought to have known, and therefore ought reasonably to have anticipated that if the plaintiff was put off of said car and abandoned in the proximity of its tracks he would, in the absence of due precautions on the part of said defendant, be more likely to be injured. And the plaintiff avers that notwithstanding the foregoing, the said defendant wrongfully, negligently, recklessly and wantonly ejected and put off and from, and caused the said plaintiff to get off and from the said car, and

abandoned and left him at a time and place where it knew, or by the exercise of due care ought to have known, a person in his condition would necessarily be exposed to great danger of bodily injury from the cars passing along and upon the track of the defendant, it being in the night time and very dark, and the place being at or near a certain switch of the defendant, where its cars frequently passed each other going in different directions, and wrongfully, negligently, recklessly and inhumanly failed to take any sufficient precaution whatever to prevent injury to said plaintiff, but left and abandoned him in his helpless and intoxicated condition in the close proximity of the track and switch aforesaid, so that, as might reasonably have been anticipated, the plaintiff fell or lay down beside and upon the roadbed, ties, rails and tracks of the defendant and being unable from his intoxication to appreciate or know the danger to which he was thus exposed, was run upon and against with great force and was struck by one of the cars of the defendant, whereby his left arm was greatly broken, bruised, cut, fractured, crushed, wrenched and mangled, so that the said arm had to be amputated above the elbow. And the plaintiff was otherwise greatly cut, bruised, maimed and lamed, and thereby became and was sick, sore, lame and disordered, and so continued for a long time, to-wit, hitherto, during all of which time he suffered great bodily pain and mental anguish; was prevented from transacting his ordinary affairs and business, and lost large gains and profits thereby, and especially by the loss of his said arm his means of making and earning a living were and are greatly impaired, and his injuries are permanent and lasting; and so that by reason of the premises he was obliged to lay out and expend a large sum of money, to-wit, the sum of $500.00, in and about endeavoring to be cured of his said injuries, and further he is greatly and permanently injured, maimed and disfigured, all of which was caused wholly and entirely by and through the carelessness and negligence of the said defendant, as above set forth."

"And for this also, to-wit: That heretofore, to-wit, on the 21st day of November, 1905, within the said county of Campbell, the said plaintiff was a passenger on one of the street cars of said defendant, which was operated by electricity upon certain tracks or rails of the defendant, who is a common carrier, and while the plaintiff was helplessly intoxicated and unable to take care of himself the said defendant expelled, put off, and caused the plaintiff to get off and leave its said car, and negligently, wantonly, recklessly and inhumanly abandoned the plaintiff in the darkness of night and in close proximity to its tracks, where it knew, or by the exercise of due care ought to have known, that the plaintiff would necessarily, in his condition, be exposed to great danger of bodily injury, and the plaintiff as might have been expected, having fallen or lain upon the rails, track, or roadbed of the defendant, he was carelessly, negligently, recklessly and wantonly run upon and against and struck by one of the cars upon said track or rails, which said car was being operated in a careless, negligent manner, and the plaintiff was struck with such force and violence by said car that his left arm was greatly broken, bruised, cut, fractured, crushed, wrenched, and mangled, so that the said arm had to be amputated above the elbow. And the plaintiff was greatly cut, bruised, maimed and lamed, and thereby became and was sick, sore, lame and disordered, and so continued for a long time, to-wit, hitherto, during all of which time he suffered great bodily pain and mental anguish; was prevented from the transaction of his ordinary affairs and business, and lost large gains and profits thereby, and especially by the loss of his said arm, his means of making and earning a living were and are greatly impaired, and his injuries are permanent and lasting; and so that by reason of the premises he was obliged to lay out and expend a large sum of money, to-wit, the sum of $500.00, in and about endeavoring to be cured of his said injuries, and further he is greatly and per-

manently injured, maimed and disfigured, all of which was caused wholly and entirely by and through the carelessness and negligence of the said defendant, as above set forth.

"And the plaintiff avers that by the exercise of due care on the part of the defendant said accident could have been averted and prevented even after he had fallen and lain upon the roadbed, track or rail, by reason of the fact that the defendant's servant in charge of the running of the car which struck the plaintiff either saw the plaintiff upon said roadbed, track or rail, or by the exercise of due care on the part of the defendant could have seen him in time to stop said car before striking the plaintiff.

"To the damage of the said plaintiff $15,000.00. And, therefore, he brings his suit."

### Additional Count to Declaration.

"And for this, also, to-wit: That heretofore, to-wit, on or about the 21st day of November, 1905, the said defendant was the owner and operator of a certain street railroad, lying and being in part within the said County of Campbell, and along a certain road, street, or highway, which was in general use by the public as such road, street and highway, near to the city of Lynchburg, where the said defendant knew large numbers of persons passed along and upon the track of the said street railroad at all times of day and night, and where said defendant knew that persons often were upon *the* said track at that point, and that the said defendant was operating cars upon said track by means of electricity, and thereupon, it became and was the duty of the said defendant in operating said cars to exercise due and ordinary care in keeping a lookout, so as to prevent injury to persons and especially the plaintiff, whom it knew, or in the exercise of ordinary care ought to have known, were and might be upon its said track and railroad at that point, and it also became and was the duty of the said

defendant to exercise due and ordinary care in running its cars at such reasonable and proper rates of speed as would enable it to stop said car upon discovering a person, and especially the plaintiff, on the track at that point before striking him, and it also became and was the duty of the said defendant to use ordinary care to provide and equip its said cars with proper lights, brakes and other appliances in order to enable its servants in charge of said cars to stop the same in time to prevent running said car upon a person, and especially the plaintiff, who was and might be on the track at that point, but the said defendant not regarding its said duties, or any of them, negligently, wilfully, recklessly, and wrongfully failed to use ordinary care to provide one of its said cars with proper lights, brakes and other appliances, and failed to use ordinary care to run the same at such proper rates of speed, and failed to use ordinary care to keep a proper lookout upon its track aforesaid, so that because and by means of the negligence of the defendant in the aforesaid particulars, and by the reckless, careless, negligent and improper management of its car aforesaid, the said defendant then and there ran its said car upon and against the plaintiff, who was then and there in and upon the said street, road, and highway, and struck upon him with great force and violence, with said car, so that his left arm was greatly broken, bruised, cut, fractured, crushed, wrenched and mangled, and had to be amputated above the elbow, and the plaintiff was otherwise greatly cut, bruised, maimed and lamed, and by means of his said injuries became and was sick, sore, lame and disordered, and so continued for a long time, to-wit, hitherto, during all of which time he suffered great bodily pain and mental anguish; was prevented from transacting his ordinary affairs and business; and lost large gains and profits thereby, especially by the loss of his said arm, his means of making a living were and are greatly impaired, and his injuries are permanent and lasting, and so that by reason of his said injuries

he was obliged to lay out and expend, and did lay out and expend, a large sum of money, to-wit, the sum of $500.00, in and about endeavoring to be cured of the said injuries, and furthermore he is greatly and permanently injured, maimed, disfigured and disabled, all of which was caused wholly and entirely by and through the carelessness and negligence of the defendant, as above set forth.

"To the damage of the said plaintiff $15,000.00. And therefore he brings his suit."

*Horsley & Kemp,* for the plaintiff in error.

*Don P. Halsey,* for the defendant in error. ,

Keith, P., delivered the opinion of the Court.

This action was instituted in the Circuit Court of Campbell county by Guill, by his father and next friend, against the Lynchburg Traction and Light Company, to recover damages for an injury.

The declaration contains four counts, and there was a demurrer to it and to each count thereof, which the Circuit Court overruled, and a judgment was rendered upon the verdict of a jury in favor of the plaintiff for the sum of $5,000; and the case is before us for review of certain rulings made during the progress of the trial.

It is unnecessary to consider the second and third counts of the declaration, as the Circuit Court instructed the jury that there could be no recovery upon them.

The first error assigned is to the judgment of the court overruling the demurrer to the first count of the declaration.

It states that the defendant was the owner and operator of a certain railroad, lying in part within the county of Campbell, and along one of the public streets, roads and highways of said

county; that the railroad was being operated by means of electricity, and that the defendant so carelessly, recklessly, negligently and improperly managed its cars that by reason of its carelessness and negligence one of them ran and struck with great force upon and against the plaintiff, who was then upon said highway, whereby his left arm was greatly bruised, broken and mangled, so that it became necessary to amputate it above the elbow.

If, as averred in the declaration, the plaintiff was upon a public highway, his right upon it was equal to that of the railroad company, and it was bound to use the degree of care proper to that situation, and if it failed to do so and as a result of its negligence the injury was inflicted upon the plaintiff, a case for the recovery of damages was made out.   But negligence is a conclusion of law from facts sufficiently pleaded.   The office of a declaration is to inform the defendant of the case which it has to meet, so that it may have a reasonable opportunity to prepare and make its defense.   It is not enough to say that the plaintiff was injured and that the injury resulted from the careless and negligent conduct of the defendant; but the facts relied upon to establish the negligence for which the defendant is to be held liable must be stated with reasonable certainty.

In *Hortenstein* v. *Va.-Carolina Ry. Co.,* 102 Va. 914, 47 S. E. 996, this court, after a full review of the authorities, disapproved the case of *B. & O. R. Co.* v. *Sherman's Admr.,* 30 Gratt. 602, and approved what was said in *B. & O. R. Co.* v. *Whittington's Admr.,* 30 Gratt. 805, stating the law to be that "in an action of tort founded on the negligence of the defendant, the declaration must allege what duty was owing by the defendant to the plaintiff, the failure to discharge which caused the injury complained of, and its breach, or make such averments of facts as will show the existence of the duty and its breach.   These averments must be made directly and positively and not merely by way of recital."   That "The object of

a declaration is to apprise the adverse party of the ground of complaint, and, in actions of tort, the declaration must state sufficient facts to enable the court to say, upon demurrer, whether, if the facts stated are proved, the plaintiff is entitled to recover. A statement of a cause of action in general terms, and general averments of negligence of the defendant which fall short of this are not sufficient."

In *Southern Ry. Co.* v. *Hansbrough,* 105 Va. 527, 54 S. E. 17, the court held it to be insufficient upon demurrer, because, while it alleged that the defendant's employees carelessly, negligently, and unskillfully, with great rapidity and with great force and violence, ran one of its engines upon and against the plaintiff, thereby inflicting the injury complained of, it did not point out in what manner the defendant was negligent, nor what duty was owing from the defendant to the plaintiff, the breach of which was the cause of the alleged injury.    The declaration in that case was less open to criticism, indeed, than that under consideration, for in that case it appears that the injury occurred upon the street of a city over which the train that inflicted the injury was being run at a high rate of speed; but it was considered that the mere rate of speed was not in itself *per se* negligence, there being no averment in that count. that there was any ordinance regulating the speed of trains.

The principle announced in *Hortenstein's Case, supra,* was approved in *Lane Bros.* v. *Seakford,* 106 Va. 93, 55 S. E. 556, and *Hot Springs Lumber Co.* v. *Revercomb,* 106 Va. 176, 55 S. E. 580; *N. & W. Ry. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *N. & W. Ry. Co.* v. *Stegall's Admx.,* 105 Va. 538, 54 S. E. 19.

*Blue Ridge Light & Power Co.* v. *Tutwiler,* 106 Va. 54, 55 S. E. 539, considered by itself apart from decisions which show that the court had no purpose in that case to depart from the principle of the *Hortenstein case, supra,* or to impair or diminish its authority, might appear somewhat to relax the

rule. The facts in that case constituting negligence do not, it may be conceded, sufficiently appear, but there was no intention upon the part of the learned judge who wrote that opinion, nor of those who approved it, to change or limit the rule announced in the *Hortenstein* case. The conclusion reached in *Blue Ridge Light & Power Co.* v. *Tutwiler,* in favor of the plaintiff in error, was upon the merits of the case so plainly right that the demurrer, for that reason, may not have been scrutinized with the same caution that would have been exercised had the decision of the case ultimately rested upon the demurrer.

We are of opinion that the demurrer to the first count of the declaration should have been sustained.

The case of the defendant in error depends largely upon his contention that at the time of the injury he was upon a public highway. The accident occurred in the county of Campbell, just outside the limits of the city of Lynchburg; and, therefore, in determining whether or not it was a public highway, the law is to be ascertained with respect, not to the dedication and opening of streets in a city, but to the establishment of public roads in the country.

In *Kelly's Case,* 8 Gratt. 632, decided by the General Court, at its December term, 1851, it was held, that "the mere use of a road by the public, for however long a time, will not constitute it a public road. A mere permission to the public, by the owner of land, to pass over a road upon it, is, without more, to be regarded as a license, and revocable at the pleasure of the owner. A road dedicated to the public must be accepted by the county court upon its records before it can be a public road. If a county court lays off a road before used, into precincts, or appoints an overseer or surveyor for it, thereby claiming the road as a public road, and if after notice of such claim the owner of the soil permits the road to be passed over for any long time, the road may be well inferred to be a public road." That case

has been frequently followed, and its authority never questioned. In *Gaines* v. *Merryman,* 95 Va. 660, 29 S. E. 738, it was approved by a unanimous court.

In the very recent case of *Town of West Point* v. *Bland,* 106 Va. 792, 56 S. E. 802, speaking with reference to the dedication of land, the court said: "There must be an intention to appropriate it to the use of the public, and the acts of the owner must be unmistakable in purpose and decisive in character; not necessarily by deed, or in writing, yet effectually and validly made by acts or declarations. It may be express or implied, and in any conceivable way by which the intention can be manifested; but in whatever way, it must be unequivocally and satisfactorily made. Parting with ownership is not to be presumed, and while in case of highways and streets a dedication may be shown by acts and declarations, they must be of such public and deliberate character as to make them generally known, and not of doubtful intention."

In *Terry* v. *McClung,* 104 Va. 599, 52 S. E. 355, the law is said to be well settled, that "the mere user of a road by the public, for however long a time, will not constitute a public road; that a mere permission to the public by the owner of land to pass over a road upon it is, without more, to be regarded as a license, and revocable at the pleasure of the owner; that a road dedicated to the public must be accepted by the county court upon its records before it can be a public road."

The intention to dedicate a street in a city, or a road in the country, may be proved in any conceivable way by which the intention can be manifested; but in whatever way, it must be unequivocally and satisfactorily made. With respect to the streets of a city, the acceptance may be shown by the "acts of the corporation officers, which may have the same effect as the acts of the county courts." *Kelly's Case, supra.*

Defendant in error, upon this point, relies upon the case of *Buntin* v. *Danville,* 93 Va. 200, 24 S. E. 830. The court

there was dealing with a street in the city of Danville, and quotes from *Harris' Case,* 20 Gratt. 833, where the court was dealing with the law applicable to streets in the city of Norfolk. What is said in *Buntin* v. *Danville,* upon the subject of the intention to dedicate, is in harmony with *Town of West Point* v. *Bland, supra,* but there are expressions in the opinion from which it might seem that the court had for the moment lost sight of the distinction made in the law between the opening of a street in a city and a highway in the country. The opinion, however, read as a whole, is not open to this criticism, for at page 205 it is said: "The road referred to had been dedicated by the owner of the soil to the public, and was used by it before he sold any of the parcels of land constituting lot N. 118; and in the conveyance to James M. Williams, Sr., the original grantee under whom the plaintiffs claim, of the parcel situate on the road, W. I. Lewis, the grantor, expressly reserved the road from the operation of the conveyance. The road was also accepted, as we have seen, by the court of the county as one of its highways. Its dedication was complete, effectual and valid."

This statement of the law is in harmony with the opinion in *Town of West Point* v. *Bland, supra.* In that case it was contended by the Town of West Point, that the road in controversy had been dedicated to the county of King William and accepted by it as a public road before the Town of West Point was incorporated, and in respect to that contention the opinion says: "There is no record evidence of the establishment of any public highway over the land in controversy, or of the working of the same as such; and while there is some evidence that boats took on and put off goods and passengers at or near where E Street, if extended, would reach the river, prior and subsequent to the incorporation of the town, there is no evidence that there was a public road located upon the land in controversy or worked as such, or that there ever was

a well defined way over it. . . . It is clear, we think, that the town fails to show that prior to its incorporation the land in controversy had been dedicated by the owners or accepted by the county authorities as a public road." In the second place it was contended by the town that, even if this be so, after its incorporation the land in controversy was dedicated by its owner as a street and accepted as such by the town. With respect to this contention, the court says: "We are of opinion that the acts relied on in this case to show an intent to dedicate are not unmistakable in their purpose and decisive in their character, and do not establish such intent with that degree of certainty and clearness required in such cases. This being so, it is unnecessary to consider the question, whether or not the acts relied on as an acceptance by the town would have been sufficient to have shown an acceptance had it been in fact dedicated."

With respect, therefore, both to streets in cities and roads in the country, the intention to dedicate may be shown in any way by which intention can be manifested. The acceptance of the dedication may, in the case of streets, be shown by the acts of corporation officers, but the acceptance of a road, in order to impose upon the public the burden of keeping it in order, must appear as matter of record, though a formal acceptance is not necessary, and the law will be satisfied if it shall appear that the county court had laid off a road before used into precincts, or appointed an overseer or surveyor for it, thereby claiming the road as a public one.

From what we have said it follows, that we do not concur with the Circuit Court as to the manner in which a county road may be established, and there will be no difficulty in conforming its action in a future trial to the views here expressed, and therefore we refrain from passing specifically upon the exceptions to the admissibility of evidence. The evidence was in a large degree, indeed, relevant and proper upon the proof as to

an intention to dedicate, and the error may be said to have consisted in the conclusion of law, that it was sufficient to prove the road in question to be a public highway, which is the result of dedication and acceptance, as hereinbefore stated.

There is an exception taken to an observation made by counsel for defendant in error in the argument of the case before the jury, "that they should be liberal in their verdict in favor of plaintiff, because if they found a small verdict the court could not increase the amount, but if they found a large verdict the court could reduce it to what the court thought was a proper amount."

As the case has to go back for another trial, we will merely observe, that it would be far better if counsel would content themselves with asking a verdict at the hands of the jury based upon the law and the evidence, without suggestions which might serve to put in peril an otherwise righteous judgment.

There are other exceptions to the giving of certain instructions and to the refusal of others, which we shall not now consider, because both the pleadings and the evidence upon another trial will present a different case to that now before us.

We are of opinion that the judgment of the Circuit Court should be reversed, and that the case be remanded for a new trial in accordance with this opinion.

*Reversed.*