# 𝔘𝔦𝔠𝔥𝔪𝔬𝔫𝔡,

## CABIN BRANCH MINING COMPANY V. HUTCHINSON'S ADMINISTRATRIX.

### March 9, 1911.

˙Absent, Keith, P.

1. MASTER AND SERVANT—*Unsafe Place—Knowledge of Vice-Principal—Pit Boss in Mine—Recollection of Defects.*—A pit boss in a mine is a vice-principal so far as the non-assignable duties of the master as to the condition of the mine are concerned, and his knowledge of the unsafe condition of the mine, if present in his memory, must be imputed to the master. If a few hours before his appointment as pit boss he had knowledge of defects which shortly thereafter proximately caused the injury complained of, it must be assumed, upon a demurrer to the evidence by the master in an action by the injured servant, that his knowledge of the defect was still present in his mind.

2. MASTER AND SERVANT—*Safe Place—Duty of Master.*—The duty of the master is only to exercise ordinary care to provide his servant a reasonably safe place in which to work. He is not an insurer of the servant's safety, and an instruction is erroneous which makes him responsible at all events for the reasonable safety of the place. Moreover, a master is not liable for failure to give his servant notice of a danger of which, in the exercise of ordinary care, the master had no knowledge or means of knowledge.

3. MASTER AND SERVANT—*Incompetency of Servant—How Master's Liability Charged.*—To charge a master with liability on account of having employed and kept in his service incompetent servants, the declaration should allege the master's knowledge of the incompetency, and that such incompetency was the proximate and efficient cause of the injury.

4. INSTRUCTIONS—*Disregarding Faulty Counts or Parts of Counts—Lack of Evidence.*—It is common practice for courts to instruct juries to disregard faulty counts in a declaration, or such as are unsupported by evidence; and the same rule obtains

where there is a good count, sufficient in itself to maintain the action, but which contains matter in its nature divisible, which is bad; and it is error to refuse to instruct the jury that no verdict can be found upon that which is bad or not supported by the evidence.

Error to a judgment of the Circuit Court of Prince William county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Moore, Barbour & Keith, H. T. Davies, James H. Price* and *S. S. P. Patteson,* for the plaintiff in error.

*Moncure, Wampler & Gloth, Richard H. Tebbs* and *C. R. Colvin,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The defendant in error (who was the plaintiff below), brought this action to recover damages for the death of her intestate, Quinton Hutchinson, attributed to the negligence of the defendant, the Cabin Branch Mining Company.

On March 1, 1909, Hutchinson, in association with a fellow-workman, or "buddy," was in the employment of the defendant, engaged in doing contract work with a drilling machine in level No. 16. On that day they were informed by Amos Stall, the pit boss, that he wanted them to work on the night shift, operating the drilling machine in level No. 19, instead of two other men, who were out of place. They accordingly worked there that night, and the next day received similar orders from the pit boss for the night of March 2. Amos Stall informed them that his brother, Fred Stall, who was then present, would be the pit boss for that night. The drilling machine was set in front of the face of the ore and within a few feet of the side wall, where

(according to the testimony of Frank Williams) the pit boss directed it to be located. Some hours after midnight, while Hutchinson was standing between the side wall and the machine, with his back towards the wall, "cranking" the machine, a piece of slate or ore, about three feet wide and four or four and one-half feet long, estimated as weighing more than a ton, rolled down from its place in the side wall and slid, catching Hutchinson and pressing him against the machine, inflicting injuries from which he died in a few moments.

There was a verdict for the plaintiff for $2,500, for which sum the court rendered the judgment now under review. .

The first assignment of error is to the action of the court in overruling the demurrer to the declaration.

This assignment is governed by the decision of this court in *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614. The two cases are quite similar in outline, and the declaration in this case was substantially copied from the declaration in the other case, which was held sufficient to maintain the action.

The next assignment of error presents the question of most importance in the case—namely, whether or not the defendant was affected with notice of the unsafe condition of the mine by reason of knowledge of defects (which constituted the proximate and efficient cause of the accident) imparted by one fellow-servant to another fellow-servant on the afternoon preceding the night on which the accident occurred, when the latter, at the close of the day, was appointed pit boss and placed in charge of the night shift.

Considering the case as on a demurrer to the evidence by the defendant, we must assume that the mine at the time and place of accident was not reasonably safe, and that Fred Stall, the temporary pit boss, was apprised of that fact in the circumstances above narrated.

In *Mountford* v. *Scott,* 1 Turner & Russell, 274, Lord

Eldon in discussing the principle invoked observes: "It may fall to be considered whether one transaction might not follow so close upon the other as to render it impossible to give a man credit for having forgotten it. I should be unwilling to go so far as to say, that if an attorney has notice of a transaction in the morning, he shall be held in a court of equity to have forgotten it in the evening."

In *Johnson's Ex'or* v. *Nat. Ex. Bank,* 33 Gratt. 487, it was said: "It is necessary that the notice or knowledge should have been given or imparted to the agent in the same transaction, unless one transaction is closely followed by and connected with the other."

The case of *Atlantic Trust & Dep. Co.* v. *Union Tr. & Title Corp.,* 111 Va. 574, 69 S. E. 975, decided by this court at the January term, 1911, quotes with approval from the case of *Cook* v. *American Tubing Co.,* 28 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 212, as follows: "We are constrained to hold with these cases, upon grounds of public policy, which require that a corporation shall be held responsible for the knowledge which is possessed by those whom it appoints to represent it. From the nature of its constitution, it can have no other knowledge than that of its officers, and, in dealing with such officers, as with the corporation itself, third parties have a right to consider that what they know it knows. . . ."

Without undertaking to review the numerous authorities to which our attention has been drawn, the correct principle is thus stated in 31 Cyc., p. 1593: "The more logical rule, however, and that which is supported by the greatest weight of recent authority, is that knowledge of an agent acquired prior to the existence of the agency will be chargeable to the principal, if it be clearly shown that the agent, while acting for the principal in a transaction to which the information is material, has the information present in his mind."

Applying the foregoing rule to the plaintiff's theory of the evidence, it is hardly conceivable that the unsafe condition of level No. 19, at the point of accident, was not present in the mind of Fred Stall, the temporary pit boss, when he took charge of the night shift at seven o'clock on the evening of March 2. Only a few hours before that time (according to the testimony of Frank Williams) Stall had discussed the unsafe condition of level No. 19 with the witness, and to avoid the danger of the situation they worked on the other side of the drift; and this condition continued until late in the afternoon when they quit work. So that it would seem that Stall's knowledge of the danger of the situation (which was present in his mind only a few hours before he assumed the duties of pit boss) was too recent to have been forgotten by him. As soon as he was appointed he became vice-principal, so far as the non-assignable duties of the master were concerned, and the knowledge of the unsafe condition of the mine, if present in his memory, must be imputed to the latter.

The remaining assignment of error, which we deem it necessary to consider, involves the court's ruling concerning instructions.

Instruction 5, given at the instance of the plaintiff, told the jury, that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place in which the plaintiff was required to work; and if they believe from the evidence that the place where Hutchinson was required to work was not reasonably safe, and he was ignorant of the fact, and could not, by the use of ordinary care, have discovered the danger, it was the duty of the defendant to inform him of it; and, in the absence of an official of higher grade, that duty devolved upon the mine boss under whom he was working.

The measure of the master's duty was only to exercise ordinary care to provide the servant a reasonably safe place

in which to work, but the effect of the instruction is to make him responsible at all events for the reasonable safety of the place. In other words, it imposes upon the master the duty of an insurer. Moreover, while the instruction exculpates the servant from contributory negligence, provided he was ignorant of the dangerous character of the place and could not have discovered it by the exercise of ordinary care, it nevertheless imposes upon the master the duty of informing the servant of the danger, though he may have had no knowledge of it, or means of knowledge, in the exercise of ordinary care.

Instruction No. 11 deals with the doctrine of the "last clear change," and was irrelevant to any issue in the case.

The court also erred in refusing to give defendant's instructions "B" and "D." These instructions deal with the insufficiency of the allegation of the declaration, that the defendant negligently employed and kept in its service incompetent servants to manage and operate its mine. In overruling the demurrer to the declaration, we were of opinion that this alleged ground of negligence was insufficiently pleaded, in that it did not charge knowledge of such incompetency to the master, (4 Thomp. on Neg., sec. 4882; Beach on Con. Neg. [3d ed.] sec. 354, n. 35) and besides because it was not alleged as the proximate and efficient cause of the injury. For these reasons we considered that portion of the declaration surplusage, and that view was pressed in argument by counsel for the plaintiff.

It is common practice for courts to instruct juries to disregard faulty counts in a declaration, or such as are unsupported by evidence; and the same rule obtains where there is a good count, sufficient in itself to maintain the action, but which contains matter in its nature divisible which is bad. *Lynchburg Traction Co.* v. *Guill,* 107 Va. 86, 93, 57 S. E. 644.

For the foregoing error in instructions, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*