## Wytheville.

AMERICAN LOCOMOTIVE COMPANY AND RICHMOND LOCOMOTIVE
WORKS V. CHALKLEY.

June 13, 1912.

Absent, Cardwell, J.

1. MASTER AND SERVANT—*Defective Machinery—Knowledge of Master.*—In
   order to render a master liable for injuries to a servant arising from
   defects in machinery or appliances, it must be shown that the master
   knew of the defects, or, in the exercise of due care, ought to have
   known of them.

2. MASTER AND SERVANT—*Defective Machinery—Inspection—Custom Not
   to Inspect.*—In a personal injury action by a servant against the master,
   it is not permissible for the master to show a custom not to inspect
   machinery so long as it worked satisfactorily, or for a month or six
   weeks, as that would contravene the rule of law which imposes upon
   him the duty to exercise reasonable care to inspect machinery and
   appliances.

Error to a judgment of the Circuit Court of the city of Rich-
mond in an action of trespass on the case.   Judgment for the
plaintiff.   Defendants assign error.

*Reversed.*

The opinion states the case.

*McGuire, Riely & Bryan*, for the plaintiffs in error.

*A. B. Dickinson* and *David Meade White*, for the defendant in
error.

WHITTLE, J., delivered the opinion of the court.

In this action damages were awarded the defendant in error,
Chalkley (plaintiff below), against the American Locomotive

Company and Richmond Locomotive Works for the loss of one of his eyes while in the service of the defendants, the casualty being imputed to their negligence. At the time of the injury the plaintiff was employed as a member of the night force to operate a drill-press, which is described as a rotating spindle in a sliding head, used for boring metal. The machine is controlled by belts and pulleys connecting it with a counter-shaft, which, in turn, is connected with the line shaft. All the machines of that character in the defendants' shops are equipped with "loose pulleys," by means of which any one of them may be stopped without affecting the others. This result is produced by means of a "shifter," an appliance which transfers the belt from a tight pulley to a loose pulley on the counter-shaft and stops the machine. When the shifting is reversed the machine is at once set in motion again. The line shaft is constantly in motion, and distributes power to all machines connected with it.

On the occasion of the accident Chalkley had started the drill-press, but, discovering that the bit or drill in the "chuck" was bent, and useless, he stopped the machine in the usual way, for the purpose of replacing the defective drill with a new one. He had inserted the new drill in the "chuck," and was tightening it with a hammer, when the machine suddenly started, causing the spindle to rapidly revolve, and the drill to strike against the hammer with great force, by means of which a scale or piece of metal was broken off and penetrated the plaintiff's left eye, putting it out.

The specific ground of negligence, upon which the plaintiff bases his right of recovery, is that the drill-press was out of repair, and in a dangerous condition, of which condition the defendants had actual notice. This notice was sought to be brought home to the defendants by the testimony of an employee named Pierotti, who operated the drill-press several weeks before the plaintiff entered the employment of the defendants. This witness testified that on several occasions the machine "started up on him," and he reported the fact to the night foreman. But it appeared that the last trouble that Pierotti had with the drill-press occurred at least two weeks before Chalkley entered the service of the defendants, and two and a half weeks before he was

hurt. In the meantime, and shortly before the accident, the machine had been overhauled by a competent millwright of more than twenty years' experience, who put it in thorough repair. From that time to within a few moments of the accident the machine had been in operation, and there was no indication of its being out of repair.

In these circumstances it is not possible to ascribe to the defendants want of ordinary care in not discovering the alleged defects, to the existence of which the accident is proximately attributed. Besides, there was other evidence adduced on behalf of the plaintiff which is fatal to his right to recover.

H. C. Chalkley, a brother of the plaintiff, testified that soon after the plaintiff was injured he examined the overhead shafting and belting, to discover, if possible, and correct the defect which caused the accident; that in rendering this service he was acting under the orders of a man whom he took to be the foreman of the defendants. His inspection disclosed that the hanger under the loose pulley had dropped down at one end about three-fourths of an inch, the threads of the bolt were worn, and the tap had worked loose and dropped down, which threw the counter-shaft out of parallel with the main shaft. The inevitable result of this condition was to cause the belt (following the line of least resistance) to run up the counter-shaft on the tight pulley and start the machine. This the witness said would happen *in half a minute*, and the machine would "keep driving."

Assuming, as we must assume, the truth of this statement, it demonstrates that the defect which caused the accident developed in the brief space of time which elapsed after the plaintiff stopped the machine to insert a new drill in the "chuck" and the sudden starting of the machine which caused the accident. The plaintiff, therefore, wholly fails to show that the defendants either knew of the defect in question or could, in the exercise of ordinary care, have discovered it in time to prevent the injury.

The principle is well settled that to render a master liable for injuries to a servant from defects in machinery or appliances, it must be shown that the master knew of the defects, or, in the exercise of due care, ought to have known of them. *Va. & N. C. Wheel Co.* v. *Chalkley*, 98 Va. 62, 34 S. E. 976; *Cabin Branch Mining Co.* v. *Hutchinson's Adm'x*, 112 Va. 37, 70 S. E. 480.

The remaining assignment of error is to the rejection by the trial court of evidence of an alleged custom, where a drill-press has been set up and the counter-shaft made plumb, not to inspect the latter while it continues to work satisfactorily, or within a month or six weeks, to ascertain if the counter-shaft is plumb.

The tendency of such a custom, if allowed to prevail, would contravene the rule of law which imposes upon the master the duty of exercising reasonable care to inspect machinery and appliances. Hence there was no error in excluding this evidence.

Upon the main assignment of error the judgment must be reversed and the case remanded for a new trial.

*Reversed.*