Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

Howard H. Williams, of New York City, for appellants.

James A. Foley, of New York City, for respondent.

PER CURIAM. It is clear that the receivers are not parties to the action. They have neither been substituted in place of the defendant corporation, nor made additional parties defendant, nor, if they had been, would the plaintiff have been entitled to a judgment against them upon the verdict of the jury. The receivers, however, were appointed to protect the property of the corporation, and its property has vested in them by virtue of the decree of the court of New Jersey, and the plaintiff would be entitled to his proportion of that property, if he should sustain the judgment against the corporation. Such an interest, however, does not entitle the receivers to appeal from the judgment rendered, not against them, but against the corporation. The corporation is not dissolved, and the plaintiff is entitled to a judgment against the corporation, irrespective of his claim to his proportion of the property of the corporation which has vested in the receivers. There may be liability of the directors or stockholders over to creditors, which the receivers are not authorized to enforce, and consequently the receivers are not entitled to be substituted for the defendant corporation as defendants in the action.

Section 1296 of the Code of Civil Procedure only applies to a person aggrieved, who is not a party, but who is entitled by law to be substituted in place of a party, or has acquired since the making of the order or the rendering of the judgment appealed from an interest which would have entitled him to be substituted, if it had been previously acquired. These receivers are not persons within this provision of the Code of Civil Procedure, and they are not entitled to be substituted for the corporation. The appeal by the receivers is therefore not allowed by our practice, or by any provision of the Code of Civil Procedure with which we are acquainted; and, not being persons against whom the judgment was rendered, they were not authorized to take an appeal therefrom. The appeal was therefore unauthorized.

The motion is therefore granted, and the appeal of the receivers dismissed, with $10 costs.

---

(164 App. Div. 55)

LEHIGH & H. R. R. CO. v. VILLAGE OF WARWICK.

(Supreme Court, Appellate Division, Second Department. October 16, 1914.)

1 DEDICATION (§ 1*)—NATURE AND ESSENTIALS.
    Dedication rests upon an estoppel in pais.
    [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 8, 10–12; Dec. Dig. § 1.*]

2. DEDICATION (§ 15*)—REQUISITES—INTENT.
    Dedication is a question of intent, the evidence of which may be direct or circumstantial, and when based upon acts or declarations, the conduct of the dedicator must be clear and decisive, showing an unequivocal inten-

tion to permanently abandon the property to the public; mere inaction on his part, unless so long continued as to be equivalent to affirmation, not raising an implication of such an intention, nor estopping him to deny it.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 13; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, First and Second Series, Dedication.]

3. DEDICATION (§ 41*)—EVIDENCE—PRESUMPTION AS TO DEDICATION BY COR-PORATION.

In the case of corporations engaged in public service, as a railroad, more definite acts are necessary to establish a right over unfenced property appurtenant to that actually used for its own purposes, even though it may be openly and commonly used by the general public, than are required to raise a presumption of a right of way over property devoted solely to private purposes. The presumption in the former case is that the public use is by way of a license, and to warrant a finding of dedication it must clearly appear that such use is under claim of right.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 80, 82; Dec. Dig. § 41.*]

4. DEDICATION (§ 43*)—ADMISSIBILITY OF EVIDENCE.

In an action by a railroad to restrain defendant village from interfering with land which the village claimed by dedication by the company, evidence as to a future purpose of the railroad's president, rather than a present intent, was incompetent.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 83, 84; Dec. Dig. § 43.*]

5. DEDICATION (§ 13*)—CAPACITY TO DEDICATE—CORPORATIONS.

Unless authorized to do so by the directors, the president of a railroad company could not dedicate its unfenced property, appurtenant to that actually used for its corporate purposes to public use.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 5; Dec. Dig. § 13.*]

6. DEDICATION (§ 13*)—CAPACITY TO DEDICATE—RATIFICATION—KNOWLEDGE.

Where the president of a railroad was without authority to dedicate a strip of its land to public use, and the directors, without any knowledge of his declarations as to dedication, constantly and consistently asserted their title to it, there was no ratification of such declarations, since to constitute ratification there must be knowledge.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 5; Dec. Dig. § 13.*]

7. DEDICATION (§ 44*)—SUFFICIENCY OF EVIDENCE.

In an action by a railroad to enjoin defendant village from interfering with a strip of land which it claimed by dedication, acts of the railroad *held* not to furnish clear and decisive evidence of an unequivocal intention to abandon the use of the strip to the public, but to show that such use as had been made by the public was by way of license, and not in the assertion of a right thereto.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85-87; Dec. Dig. § 44.*]

8. DEDICATION (§ 35*)—ACCEPTANCE—REPAIRS.

In some instances acceptance of a dedicated highway may be established by evidence of repairs thereto, and other acts of ownership by a municipality.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68-71, 75, 76; Dec. Dig. § 35.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. DEDICATION (§ 44*)—SUFFICIENCY OF EVIDENCE—ACCEPTANCE.

In an action by a railroad to enjoin interference with the strip of land claimed by defendant village by dedication, evidence *held* insufficient to show an acceptance of a dedication.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

Appeal from Special Term, Orange County.

Action by the Lehigh & Hudson River Railroad Company against the Village of Warwick. From a judgment for defendant, plaintiff appeals. Reversed, and a new trial granted.

See, also, 78 Misc. Rep. 1, 137 N. Y. Supp. 658.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Charles F. Brown, of New York City (Alfred Ely, Jr., of New York City, on the brief), for appellant.

M. N. Kane, of Warwick, for respondent.

BURR, J. In February, 1861, Samuel C. Welling conveyed to the Warwick Valley Railroad Company, the predecessor in title and interest of plaintiff, about three acres of land in the village of Warwick. It was bounded on the west by Main street, afterward called Oakland avenue, and on the south by a strip of land 30 feet in width, dedicated by said Welling as a public highway, and subsequently known as Railroad avenue. This land was conveyed—

"solely for the use and purpose of constructing and maintaining thereon a railroad and a depot, engine house, turning table, woodsheds, and buildings or erections necessary for the use of said road (excepting that no dwelling house is to be erected or maintained thereon). The said lands are to be used for the purpose of receiving and storing freight and piling ties and wood on the same for the use of said railroad company. The depot to be erected on said lands shall be erected and located on the same at a point not less than 300 feet from the said highway adjoining said lands, and shall be completed by the 1st day of January, 1862; said depot to be kept and maintained for the reception and transmission of passengers and freight on said railroad and for other purposes properly connected with the running and operating of said railroad and for no other purpose whatever."

In September, 1912, defendant tore up and removed a sidewalk constructed by plaintiff upon said premises, contending that a strip of land included within the boundaries of said conveyance, and which is about 9 feet in width, running along the southerly line thereof, and also a triangular piece of ground lying to the north of the intersection of the northerly boundary line of said strip with the easterly line of Oakland avenue, and containing about 136 square feet of land, had been dedicated to public use, and had become a part of the streets of said village. Plaintiff thereupon brought this action in equity to restrain defendant from interfering with said land and from committing continuous trespass thereon; and from a judgment in defendant's favor, plaintiff appeals.

[1, 2] Plaintiff contends that its title to the land in dispute was such that it was without power either to grant or dedicate the same for street purposes. Rochdale Canal Co. v. Radcliffe, 18 Adolphus & Ellis (N. S.)

287. Although in the answer interposed by it defendant claimed title both by prescription and dedication, no evidence was introduced which would justify a finding in its favor upon the former ground. The learned court at Special Term rested its decision wholly upon dedication and acceptance made in the spring of 1894. As we do not consider that the evidence warrants this conclusion, it will be unnecessary to consider the character of plaintiff's title, or, if upon condition, the consequences thereof. Dedication rests upon an estoppel in pais. Noyes v. Ward, 19 Conn. 250; City of Cohoes v. D. & H. C. Co., 134 N. Y. 397, 31 N. E. 887. It is a question of intent, and the evidence thereof may be direct or circumstantial. When based upon acts or declarations, the conduct of the one who dedicates must be clear and decisive, showing a positive and unequivocal intention on his part to permanently abandon the property to the public. Town of West Point v. Bland, 106 Va. 792, 56 S. E. 802; City of Chicago v. C., R. I. & P. Ry. Co., 152 Ill. 561, 38 N. E. 768. Mere nonaction on the donor's part, unless so long continued as to be equivalent to affirmation, will not raise an implication of an intention to dedicate property to public use, nor will it estop the owner to deny such intention. McKey v. Hyde Park, 134 U. S. 84, 10 Sup. Ct. 512, 33 L. Ed. 860. Dedication must result from an active, not a passive, state of the owner's mind. City of Chicago v. C., R. I. & P. Ry. Co., supra.

[3] In the case of corporations engaged in public service, such as railroad and wharfage companies, more definite and distinctive acts of admission are necessary to establish a right over unfenced property appurtenant to that actually used for corporate purposes, even though such property may be openly and commonly frequented by the general public, than are required to raise a presumption of a right of way over property devoted solely to private purposes. The presumption in such case is that the use by the general public is by way of license. To warrant a finding of dedication, it must clearly appear that such use is under claim of right. Concklin v. N. Y. C. & H. R. R. R. Co., 149 App. Div. 739, 134 N. Y. Supp. 191, appeal dismissed 207 N. Y. 752, 101 N. E. 1099; N. Y. C. & H. R. R. R. Co. v. Village of Ossining, 141 App. Div. 765, 126 N. Y. Supp. 517, affirmed 207 N. Y. 648, 100 N. E. 1131; Weems Steamboat Co. v. People's Co., 214 U. S. 345, 357, 29 Sup. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222; Hast v. Piedmont & Cumberland R. R. Co., 52 W. Va. 396, 44 S. E. 155; Williams v. N. Y. & N. H. R. R. Co., 39 Conn. 509; City of Buffalo v. D., L. & W. R. R. Co., 68 App. Div. 488, 74 N. Y. Supp. 343, affirmed 178 N. Y. 561, 70 N. E. 1097.

It is our duty to apply these rules, which we deem to be well established, to the evidence in this case. Prior to 1894, the main track of the railroad operated by plaintiff and its predecessor was located upon a part of the 9-foot strip in dispute, and the railroad station building was to the north of the track. There was some evidence that there was a small piece of fence, described as a "pipe line" fence upon the Main street boundary of the land; but it would appear that this was only intended as a guard to keep travelers from straying from the highway. Its exact location and its length are not given; but it does appear that it continued but for a short distance, and that no part of the land was

inclosed within it. The rest of the plot was open and unfenced, and people and vehicles passed over any part of it, except such as was occupied by tracks and railroad buildings appurtenant to the station, at pleasure. That up to this time there was neither dedication nor acceptance is apparent. Prior to that date defendant seems to have placed upon the railroad grounds fire hydrants and a watering trough; but when requested to remove the same it did so at once and without asserting any claim of right.

The finding of the trial court is that this dedication occurred in the spring of 1894. At that time the railroad company constructed a new station building, ornate in character. This building was located further south than the original one, and it then moved its tracks to the north side thereof. To the west of the station building plaintiff laid out a park and sodded the same, and it was beautified with shrubs and plants. The southerly line of this park was the northerly line of the strip in dispute. The remainder of such strip continued to be, as it had been, open, unfenced, and unoccupied, and to the eye of the ordinary observer was a part of Railroad avenue. A gutter separated the south line of the park from the remainder of said strip. Defendant seems to have placed a catch-basin, with a grating over it, in this gutter, and the surface water was carried by a drain across plaintiff's property and under its tracks, and emptied in a little creek to the north thereof. No evidence of any express authority to construct this drain or install this grating and catch-basin was given.

[4] This being the physical situation and condition of the property, defendant sought to establish dedication at that time by direct evidence and by circumstantial evidence arising from use. It called two witnesses, who testified to conversations at that time with Mr. Grinnell Burt, who was then president of the road. To one of these witnesses Mr. Burt stated with reference to the fire hydrants and watering trough:

"They were on the railroad ground, and that he was going to build a park. and that they would have to be taken off. He would make a park up to within 7 to 9 feet of their line. * * * He said that it would narrow up the street some, but he would make a nice round corner at the end of the park on Oakland avenue."

This witness also testified that thereafter the park was laid out, and the curve referred to made. The other witness testified that Mr. Burt—

"came to my office one day and spoke about laying out the park in connection with the improvement that he had made by the building of the station, and as I recollect the conversation he said that he intended to make the park a complement to the station, and that he considered the station a monument to his memory, something more than could be expected in a village the size of Warwick. The station was a very ornate affair, and to make a proper setting for the station he was going to make a fine park there. In fact, they were about building it then, partly building it, and I remember he spoke about the shrubs and ornaments in that line that he expected to put in, and he also said that he intended to put part of what he said was railroad ground into the village street—into Railroad avenue."

[5] It is doubtful if this evidence was competent. First. It is evidence of a future purpose rather than a present intent. Second. Un-

less authorized so to do by plaintiff's directors, the president of the railroad company could not dedicate its land to public use.   Niagara Falls Susp. Bridge Co. v. Bachman, 66 N. Y. 261;   Town of West Point v. Bland, supra.

[6] There is no evidence of such authority; nor can it be claimed that there was such ratification by plaintiff's directors of his unauthorized act, if his declared intention, followed by the construction of a park, under the circumstances hereinbefore disclosed, could be said to be evidence of actual dedication.   To constitute ratification, there must be knowledge.   Not only is there no evidence of any knowledge upon the part of plaintiff's directors of Burt's declarations, but the evidence is that as to the strip in dispute, both east and west of the station building, they constantly and consistently asserted their title to the whole thereof down to the time of the commencement of this action, and up to a very short time prior thereto defendant seems to have acquiesced in rather than disputed its assertion.

[7] There remain, then, only the acts of plaintiff in connection with such strip of ground upon which to rest defendant's claim.   It is true that plaintiff allowed it to remain apparently a part of the street and to be used in connection therewith.   It is true that, after the park was constructed, persons in turning from Oakland avenue into Railroad avenue were apt to encroach upon the land in the park, and to prevent this plaintiff put stones intended to act as buffer blocks at the intersection of the park line with said avenue, and to create a graceful curve placed them a short distance back from the extreme line of its property.   It was the placing of these buffer blocks that apparently gave rise to defendant's claim to the triangular piece of ground hereinbefore referred to at the intersection of the two streets.   But such use is at least as consistent with a desire upon plaintiff's part to afford easier access to its own property and the station building thereon for its patrons as to abandon the use thereof to the public.

There is evidence, not disputed, that, after constructing the station building and park, plaintiff did some work upon this strip of ground and the gutter adjoining the same in keeping it clean and free from weeds.   While defendant may have done more work of this character than plaintiff, the latter did some work thereon, and its acts in this regard are inconsistent with an intent to utterly abandon ownership thereof.   But, beyond that, there is one undisputed fact in this case which seems to us to clearly establish that the controlling purpose of plaintiff in leaving this strip open and unfenced was to benefit its patrons and facilitate them in the use of its property.   On the south side of the station building there is erected a porte cochere, through which vehicles approaching the station may pass, stopping and receiving passengers and permitting them to alight.   This porte cochere extends across the strip in dispute, so that its exterior line is about 4 feet 3 inches north from the southerly line thereof.   In the second story of this extension there is a part of the office building of defendant, reached by stairs passing up from the ground level.   It is perfectly clear, therefore, that the principal use that can be made of the greater portion of this strip of ground is by patrons of plaintiff desiring to approach the railroad station, and that the general public passing up and down Rail-

road avenue would not only have no occasion to drive over this strip, but it would be for its inconvenience to divert from the main portion of the traveled highway and pass over this strip of ground and through the porte cochere.

[8, 9] We conclude, therefore, that not only do the acts of plaintiff fail to furnish clear and decisive evidence of an unequivocal intention to abandon the use of this strip of ground to the public, but, on the other hand, precisely a contrary inference is to be drawn from the use made of the same, and that such use as the general public did make of the ground in dispute was by way of license, and not in the assertion of a right thereto. If there is no sufficient evidence of dedication, it is unnecessary for us to consider evidence of acceptance on defendant's part; but, if we should consider the same, such evidence is equally weak and inconclusive. There is no evidence of express acceptance by formal action of the village authorities. It is true that in some instances acceptance of a dedicated highway may be established by evidence of repairs thereto and other acts of ownership by a municipality. Smith v. City of Buffalo, 90 Hun, 118, 35 N. Y. Supp. 635. There is evidence that in the spring of the year, when the village authorities used the mud scraper upon Railroad avenue, they also used the same upon the 9-foot strip adjoining thereto. There is evidence that, when gravel was scattered over the surface of this street, it was also spread upon the adjoining strip. There is no evidence of any appropriation of any sum of money for the care or improvement of this particular strip of ground as distinguished from the original street. There is not even evidence that when appropriations were made for the improvement or repair of Railroad avenue, or contracts or directions given for work thereon, anything was said as to the width of such avenue, or whether the 9-foot strip was or was not included therein. It seems quite as likely that the work done upon this piece of ground was carelessly or thoughtlessly done as that it was done with the express sanction of the village authorities, and in furtherance of a deliberate intent to accept a dedication of this land and to impose upon defendant a liability in connection with the care thereof.

It may be that upon a new trial of this action defendant will be able to introduce further evidence of dedication and acceptance. While the judgment appealed from must be reversed, we have concluded that it would be in the interests of justice to grant a new trial rather than to give affirmative judgment for the plaintiff. If, however, the parties feel that no further evidence can be introduced, an application will be entertained to direct judgment absolute for the plaintiff, in which case proper findings must be made to sustain such judgment.

Our present decision is that the judgment appealed from be reversed upon questions of fact as well as of law, and a new trial be granted, costs to abide the final award of costs. The seventh finding of fact contained in the decision is reversed, as contrary to the evidence. All concur.