# Richmond

PARAMOUNT COMMUNITIES, INC., ET ALS. V. JAMES
ABRAMSON.

April 23, 1945.

Record No. 2885.

Present, All the Justices.

The opinion states the case.

*J. Randall Caton, Jr.,* and *Duckett, Gill & Anderson,* for the appellants.

*Jesse, Phillips, Klinge & Kendrick,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Appellee, James Abramson, instituted this suit in equity to perpetually enjoin the appellants, Paramount Communities, Inc., Buckingham Community, Inc., First Buckingham Community, Inc., Second Buckingham Community, Inc., Third Buckingham Community, Inc., Fourth Buckingham Community, Inc., Fifth Buckingham Community, Inc., Alson Realty Corporation and Gerand Construction Co., Inc., from interfering with or disturbing him in the use of his property situated in Arlington county, and to compel appellants to remove a fence erected by their agents across Fourth street, North, dedicated by appellants in conformity with a cer-

tain sub-division owned and controlled by said appellants and situated in Arlington county, Virginia.

The answer of appellants denied that Fourth street, North, had been dedicated for public use.

Issue was joined and all matters of fact were, by agreement of counsel, submitted to the chancellor upon evidence heard *ore tenus*. This being true, the conclusion of the chancellor upon questions of fact is entitled to the same weight as the conclusion of a jury in an action at law. The issue thus presented was whether Fourth street, North, was a public highway or street.

The legal principle by which the question must be determined has been frequently stated.

In *West Point* v. *Bland,* 106 Va. 792, 793, 56 S. E. 802, Judge Buchanan said: " 'In order to constitute a dedication,' as was said by this court in *Harris* v. *Commonwealth,* 20 Gratt. (61 Va.) 833, 837, 'there must be an intention to appropriate the land for the use and benefit of the public. The intention, the *animus dedicandi*, is the principle of the doctrine of dedication. The acts and declarations of the landowner indicating such an intention must be unmistakable in their purpose and decisive in their character to have that effect.' *Talbott* v. *Richmond, etc., R. Co.,* 31 Gratt. (72 Va.) 685, 688, 689; *Buntin* v. *Danville,* 93 Va. 200, 204, 24 S. E. 830, and cases cited; *Gate City* v. *Richmond,* 97 Va. 337, 33 S. E. 615; Washburn on Easements (2d Ed.) 180."

The facts deduced from the conclusion of the chancellor may be thus summarized: Appellants were engaged in the development of the area owned by them for the purpose of subdivision and the building of apartments; the legal title to the real estate was vested in Paramount Communities, Inc. In the course of the proposed developments it was customary for Paramount to convey certain tracts of land to the subsidiary corporation. It is admitted that the officers and directors of the defendant corporations as of September, 1942, were identical, except in the case of the Buckingham corporations of which a representative of the

Federal Housing Administration is a director. In the course of the proposed development of land acquired by the Buckingham corporations from Paramount, a representative of the Buckingham corporations presented to Frank L. Dieter, the Arlington county planning engineer, as required by "An Ordinance to Regulate the Platting and Recording of Subdivisions of Land in Arlington County * * ," a plat and plans for the proposed subdivisions. The pertinent ordinance is as follows:

"1. APPROVAL OF PLAT

"No such plat shall be recorded, or offered for record, nor shall any sale of land be offered with reference thereto, until the said plat has been approved in writing by the County Manager of Arlington County, Virginia, who shall ascertain, before approving it, that the said plat has satisfied all of the requirements of this ordinance."

At the time this plat was presented for approval and for the purpose of recordation, Fourth street, North, terminated before reaching the Crewe property, now owned by appellee. The county planning engineer requested that the street be shifted so as to include a portion of the Crewe property. He was assured by a representative of the corporations that Fourth street, North, would be later extended and would provide for properties outside of the Buckingham ownership. Pursuant to this undertaking, a letter was received from Claude O. Thomas, the proven attorney and agent of the corporations, agreeing that in later developments access to other properties would be negotiated.

In 1940, a representative of Buckingham Community, Inc., presented to the planning engineer a further plat. This plat showed the extension of Fourth street, North, but did not provide for access to the Abramson (Crewe) property. The planning engineer thereupon drew upon this plat in red pencil an access to the Abramson (Crewe) property and advised that the plat would be approved only upon the making of corrections directed by him. Mr. Rupert, engineer for Buckingham Apartments, re-drafted the plat as directed

by the planning engineer and it was then approved and in form for recordation. However, it was not recorded by the corporation's representative as an evidence of dedication, but was recorded with two deeds of trust executed by Fifth Buckingham Community, Inc., to the Prudential Life Insurance Company as a muniment of title.

It further appears from the evidence of Mr. Dieter that he dealt with Mr. Thomas as the authorized agent of the corporations, and that he would not have approved the plat submitted to him, which was essential to the corporate developments, had it not contained a provision for access to the property of appellee. That the approval of the plat by Mr. Dieter redounded to the great benefit of the corporations is beyond question. Without the approval of Dieter, the corporations could not have legally developed the properties involved. While not conclusive of the question, why the approved plat was not recorded and a deed of dedication executed, the evidence of Mr. Thomas throws this light upon the subject: He testified that when he presented the plat with the Crewe property excluded, the county authorities insisted that access to the Crewe property should be included; that he refused to accede to the proposition and gave as his reason for his refusal the following: "Just at that time Buckingham was considering the purchase of the Crewe property, and I realized (if) we put a street along Mrs. Crewe's line, it would make the property more valuable and I just didn't want to put it along there." Then, too, this appears: "At the conference Mr. Dieter said he would not approve that plat, and he did insist that the access to the Crewe property be made a part of the plat. I told Mr. Dieter I could not recommend it. I did not propose to give Mrs. Crewe a club to break my neck with."

Thomas further testified that he represented these several corporations over a period of years and that he frequently dealt with the county officials in regard to the development of the Buckingham properties, as all of these properties were generally known.

In answer to the question: "If you said to any of these officials, 'I will agree we will do thus and so if you will do that,' they would have had a right to rely on you as representing the general Buckingham Corporation, would they not?," he replied, "I think they would."

Appellee testified that before he purchased the Crewe property he personally inspected it and found an improved street which permitted access from Fourth street, North, to the Crewe property; that he went to the clerk's office and found there was a plat there which showed the same situation as the physical condition of the property showed.

It is clearly shown that the various corporations were interrelated. They occupied the same offices, they were managed by the same officers and the general business was conducted by the same representatives.

It is thus manifest that the facts of the case are with the appellee, and, unless the law of the case is against him, he should prevail.

It is the contention of appellants that since the plat approved by the planning engineer, Mr. Dieter, was never recorded with any formal deed of dedication, there has been no dedication of Fourth street, North. This contention is untenable under our decision in *West Point* v. *Bland*, *supra*. There we held:

"A dedication is not required to be made by deed or other writing, but may be effectually and validly made by acts or verbal declarations. It may be express or implied. It may be made in every conceivable way by which the intention of the party can be manifested. * * * * But in whatever way made, it must be unequivocally and satisfactorily proved." See also *Buntin* v. *Danville*, 93 Va. 200, 204, 24 S. E. 830.

It is further contended that the alleged act of dedication was not authorized by the legal holder of the title to the real estate.

It cannot be disputed that Thomas was held out to the county officials as possessed of full power to deal with them in securing valuable rights. Appellee testified, without

denial, that since his purchase of the Crewe property a representati.. of Buckingham approached him with an offer to purchase the property. To permit appellants to retain the benefits derived from the negotiations with the county authorities and then fail to apply the doctrine of *estoppel in pais* would be most inequitable.

In 31 C. J. S. 332, this is said: "The owner of real property, of an interest therein, by clothing another with an apparent title thereto or with an apparent authority over it, may estop himself to deny such title or authority in the matter of dealing with the property, and this principle is especially applicable where he actively advises the party setting up the estoppel to deal with the person whom he has clothed with apparent title to or authority over the property."

It is argued here, as was argued in *Moore v. Aetna Cas., etc., Co.,* 155 Va. 556, 568, 155 S. E. 707, that in the absence of any express resolution by the board of directors, in formal meeting assembled, and recorded in the minute book, the agent was without authority to bind the corporations.

What was said by Mr. Chief Justice Prentis in the *Moore Case* is applicable to the present situation: "It is perfectly well settled, however, that where there is a close corporation such as this one, in which the stockholders of the corporation themselves ignore the by-laws and conduct its business differently, that rule does not apply * * * .

"In *Haynes Chemical Corp. v. Staples & Staples, Inc.,* 133 Va. 82, 92, 112 S. E. 802, 806, this is quoted from *American Button-Hole Overseaming S. M. Co. v. Burlack,* 35 W. Va. 647, 661, 14 S. E. 319, 323: 'We cannot close our eyes to the fact that there are so-called corporations which for all practical purposes, when they do business, cannot be reached at all if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume. He is possessed of full authority to talk and act when there is anything to be gained, but he is not the proper man

to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on, "Now you see it and now you don't." The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and agency are not so narrow or so rigid that they may not be made to reach such cases.'"

In our opinion the decree is plainly right and must be affirmed.

*Affirmed.*