JOHN W. DANIEL & COMPANY, IN-
CORPORATED, Plaintiff,

v.

JANAF, INCORPORATED, Defendant.

Civ. A. No. 2466.

United States District Court
E. D. Virginia,
Norfolk Division.

March 20, 1958.

**220**

Charles L. Kaufman (William P. Oberndorfer, Ira B. Hall and T. Howard Spainhour), Norfolk, Va., for plaintiff.

Kellam & Kellam (Edwin C. Kellam), Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

The defendant corporation (hereinafter called Janaf) is, for the purpose of this proceeding, a real estate development company engaged in the construction and sale of numerous houses in a section known as Admiralty Acres, Princess Anne County, Virginia, on property owned by Janaf. Plaintiff (hereinafter referred to as Daniel) is a contractor employed by Janaf for the purpose of performing certain work and furnishing materials in the construction of the houses in said housing project of defendant. It was originally contemplated that Daniel would build approximately thirty houses for Janaf, but by March 1, 1955, when Daniel left the project, only five houses had been completed. In the instant controversy we are not concerned with the reasons for Daniel's action in not completing the thirty houses as the parties entered into a subsequent contractual agreement dated March 24, 1955, and thereafter entered into an arbitration agreement dated August 1, 1955; the latter being modified by letter dated February 3, 1956, signed by Daniel and Janaf.

When Daniel left the job on or about March 1, 1955, a considerable sum of money was due by Janaf. In order to clarify the understanding between the parties, Daniel wrote a letter to Janaf under date of March 24, 1955, which letter was confirmed and agreed to by Janaf. After reciting that Daniel had furnished materials and performed work in connection with the construction of houses, streets, water and land improvements on the twelve acre tract known as Admiralty Acres, as well as land improvements on an adjoining tract, the contract provides in part as follows:

"2. All work performed and materials furnished by us in the past or in the future have been and shall be on the basis of cost plus six percent profit. The word 'cost' includes the actual cost of labor, material, subcontracts and equipment rental, and in addition thereto a sum equal to ten percent of our payroll for insurance and social security on wages, a sum equal to two percent of our payroll for office overhead, a sum equal to one percent of the material purchased, and a one and one-half percent markup on subcontracts and equipment rental. In allocating costs to a single house there shall be included, on a footage basis, a proportionate part of the costs incurred in connection with the street, water and land improvements.

"3. As of February 1, 1955, you were indebted to us in the approximate amount of $101,715.87, together with a 6% profit thereon, aggre-

gating approximately $107,818.82. Unless said amount is paid in full on or before May 1, 1955, the unpaid balance thereof will bear interest at 6% per annum from May 1, 1955, until paid. Bills for costs (and profit thereon) incurred after February 1, 1955, are due and payable when presented, and if not paid within sixty days after presentment shall bear interest at the rate of 6% per annum from said sixty-day period until paid.

"4. We shall furnish such assistance in supervising and advising as is reasonably necessary to the completion of the houses on the 12-Acre Tract, and we shall have the privilege of maintaining a supervisor on the job. In addition thereto, until the construction of said houses (approximately 30) is completed, we shall advance such construction costs (on a cost plus 6% profit, as aforesaid) as will be reasonably necessary to effect the completion of said houses, provided, however, that we shall not be obligated to make any further advances unless (a) all costs, expenses, contracts and subcontracts, relating to any house in respect of which we are asked to make advances shall have been approved by us, and (b) the proposed advance, together with all other such advances made by us after the date hereof will not exceed two-thirds of the aggregate amount which we have been paid by you to the date of the proposed advance.

*    *    *    *    *    *

"6. All obligations hereunder shall be fully satisfied when we have been paid all sums owing us to date, in accordance with this agreement.

*    *    *    .    *    *    *

"8. This letter contains the entire agreement existing between us and supersedes and annuls any and all prior agreements."

During April, 1955, Janaf paid Daniel the sum of $10,000. No further payments were made and the arbitration agreement was subsequently entered into on August 1, 1955 [1].

The arbitration agreement recites that Daniel claims an indebtedness in the sum of $136,328.86 for which it had filed a mechanic's lien against Janaf's property; that Janaf, while not admitting the indebtedness, agreed to pay $90,000 unconditionally, and the balance of said claim conditionally; that the mechanic's lien would be released by Daniel and all rights to enforce same waived; and that the claim would be satisfied as follows:

(1) Janaf to give a note dated May 1, 1955, in the sum of $57,-000.00, plus interest, payable on November 1, 1955, secured by a deed of trust on certain of Janaf's property.

(2) Janaf to give a note dated May 1, 1955, in the sum of $33,000.-00, plus interest, payable on January 1, 1956, secured by a deed of trust on certain of Janaf's property.

(3) Janaf to give a note dated May 1, 1955, in the sum of $46,328.-86, plus interest, payable on January 1, 1956, secured by a deed of trust on certain of Janaf's property; but the due date and amount due, if any, under this note is made specifically subject to arbitration as specified in said agreement.

The agreement provides for the appointment of two arbitrators, one by each party, with the arbitrators appointing an umpire. It is further stated:

"The two arbitrators and umpire shall constitute a Board of Arbitration, shall review Daniel's entire claim of $136,328.86, and shall deter-

---

1. Janaf contends that Daniel executed the agreement in Danville, Virginia, on July 29, 1955, and hence the agreement is void. There is no merit to this argument. It was re-executed in Norfolk on August 1, 1955; furthermore, the parties acted under the agreement without questioning its validity until a date subsequent to the award.

mine what part thereof (if less than all) is properly due and owing. If, after allowing the credits provided for in subparagraph (a) of this paragraph, the Board of Arbitration finds that less than $136,328.86 (adjusted for said credits) is properly due and owing, the difference between $136,328.86 (as adjusted) and the amount determined by the Board of Arbitration, whose determination shall be conclusive upon the parties hereto, shall be charged against the Arbitrable Balance, and the amount actually payable under the $46,328.86 note shall be deemed reduced accordingly; but if such difference exceeds the Arbitrable Balance, such excess shall be ignored, it being expressly understood and agreed that said notes of $57,000 and $33,000, aggregating $90,000, are absolutely payable hereunder, only the Arbitrable Balance being subject to adjustment by arbitration."

It is likewise specified that if the Board did not arrive at a decision on or before January 1, 1956, the due date for payment of the $46,328.86 note would be postponed until the Board rendered its decision, and if the decision was not rendered by February 1, 1956, a new umpire would be appointed every thirty days until a decision was made. The parties also agreed that, subject to certain exceptions not pertinent herein, all the rights and obligations against and to each other were settled by the agreement, and that each party released the other from all claims, of every kind and nature, in respect of any matter theretofore transpiring between them.

Subsequent to the execution of the arbitration agreement and the recordation of the deeds of trust securing the indebtedness, Daniel named an architect, Dudley, as its arbitrator. Janaf selected an accountant, Hill, as its arbitrator. The two arbitrators, after consulting with the parties, chose as umpire one Stanley Waranch, an experienced real estate housing developer. The Board first met on October 18, 1955, and it soon became apparent to everyone that it would be impossible to complete the matter prior to February 1, 1956. On February 3, 1956, a letter, signed by the corporations acting through their respective presidents, was addressed to and delivered to the arbitrators. After referring to the agreement of August 1, 1955, the following appears:

"It is understood and agreed that your scope and authority in respect of said agreement are exclusive and complete; that you have full power and authority to decide all matters of equity, law and fact relating thereto; that you have full power and authority to control the arbitration proceeding until your decision has been rendered; that every decision rendered by you shall be binding and conclusive as to both of us; that no appeal lies to any court whatsoever from any such decision; and that, notwithstanding anything in said agreement to the contrary, your authority shall not be terminated as of March 1, 1956 (being the date to which your authority was extended by letter dated January 16, 1956, signed by counsel—see subparagraph (b) of paragraph 3 of said agreement), but shall continue until your final decision is reached, which, as stated aforesaid, shall be binding and conclusive upon us, without right of appeal."

The Board conducted approximately twenty-five separate meetings, not including its private sessions devoted to a discussion of the controversy. Eighteen volumes of testimony and fifty-two exhibits constituted the record before the Board. The magnitude of the task presented to these three men is rather obvious. With the permission of the parties, the Board selected and obtained advice from its own counsel. It heard arguments of counsel, reviewed the transcript and rendered its unanimous award on May 22, 1957, finding that Janaf was indebted to Daniel in the sum of $43,993.92, the pertinent portion of the award being:

"We * * * find upon all the evidence and arguments presented to us that the agreement of March 24, 1955, controls the obligations between said parties, and that we have computed and found that a total indebtedness of $133,993.92 (after recognizing an initial payment of $10,000.00) was incurred, and payments in the sum of $90,000.00, with interest thereon, have been made during the course of arbitration, leaving a present principal balance due of $43,993.92 (which sum includes and discharges the obligations between the parties relative to Hall-Hodges Company, Inc., A. P. Smith Company, Tidewater Plywood Corporation and Johnson Linoleum & Tile Company), and that in fixing said award the arbitrators have found as a part hereof that interest is properly due on said balance at 6% per annum from September 1, 1956, until paid, the fixing of said interest date being a part of the computation of said award itself, and is adjusted to that date in arriving at the proper principal sum."

Thereafter, plaintiff demanded payment in accordance with the award of the arbitrators but defendant has failed or otherwise refused to comply. This action followed and, as the arbitration proceedings had been delayed for a long period of time, certain lots were sold and released from the deed of trust with the proceeds being placed in escrow. This action, in addition to seeking money damages, is in the nature of a declaratory judgment requesting a ruling from this Court as to the disposition of two escrow accounts on deposit in the Norfolk Federal Savings and Loan Association in the sum of $5,547.65 and $37,619.76, respectively, as of January 3, 1958, or a total of $43,167.41. One lot remains unreleased from the deed of trust and Daniel now desires to foreclose upon same unless the amount of the award, plus interest, is paid to it by Janaf.

The answer to the complaint asserts many defenses but, for the purposes of this discussion, they may be confined to (1) a contention that Janaf acted without proper authority in entering into the arbitration agreement, and that the acts of its president were without proper authority, (2) that the Board was not properly constituted, and (3) that the findings of the Board were without proper foundation and not in accordance with the submission.

During the course of the trial, it became apparent to the Court that Janaf was endeavoring to attack the award through the medium of an affirmative defense. In line with Edge Hill Stock Farm v. Morris, Gray & Hunter, 155 Va. 103, 154 S.E. 473, the Court permitted the hearing to continue and evidence to be introduced under the assumption that Janaf would request leave to file an amended answer and counterclaim; the latter seeking to set aside the award for palpable errors. The amended answer and counterclaim filed by leave of Court, over objection of Daniel, after the evidence had been concluded, likewise asserted that the arbitration agreement was void as against public policy in that it attempted to oust the courts of jurisdiction by reason of the supplemental agreement of February 3, 1956, which made the award "binding and conclusive, without right of appeal".

■■ There is obviously no merit in the contention that Janaf's act in submitting to arbitration was *ultra vires* and without proper authority. A resolution of its Board of Directors at a meeting held on August 1, 1956, authorized the execution of the deeds of trust and notes in the respective amounts of $57,000, $33,000 and $46,328.86, and specifically referred to "an agreement between this corporation (Janaf) and John W. Daniel & Company, Incorporated, bearing date on the 1st day of August, 1955, a copy of which is hereby made a part of these minutes; that said officers be, and hereby are, authorized and directed to take such actions as they deem advisable in order to effectuate the purpose expressed in said agreement". Furthermore, submission to arbitration is in the

usual course of business which clearly comes within the competency of a corporate president to bind the corporation. Haynes Chemical Corp. v. Staples & Staples, 133 Va. 82, 112 S.E. 802; Food Products Co. v. Piarce, 154 Va. 74, 152 S.E. 562; Winston v. Gordon, 115 Va. 899, 80 S.E. 756. Hence the agreement of August 1, 1955, and its modification dated February 3, 1956, constitute corporate acts and are binding upon Janaf.

■ The theory advanced by defendant to the effect that the Board was not properly constituted lies in the fact that the decision was not rendered prior to February 1, 1956, which, according to the original agreement, required the appointment of a new umpire. This argument falls because of the modification agreement dated February 3, 1956, which has been declared valid and binding upon Janaf.

■ There remain for consideration three pertinent inquiries, namely, (1) the validity of the agreement, (2) the palpable errors, if any, which may justify setting aside the award, and (3) whether the Board exceeded its authority.

Janaf insists that arbitration agreements made final and binding, without the right of appeal to any court, are void as against public policy. With this general statement, and disregarding notable exceptions to such a rule, the Court is in agreement. Bell v. Western Railway, 228 Ala. 328, 153 So. 434; In re Patterson-MacDonald Shipbuilding Co., D.C., 284 F. 277; Rentschler v. Missouri Pac. R. Co., 126 Neb. 493, 253 N.W. 694, 95 A.L.R. 1; Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876; Skinner v. Gaither Corp., 234 N.C. 385, 67 S.E.2d 267. The legal principle is, however, subject to at least two recognized exceptions. There is a marked difference between an agreement to arbitrate and a submission consummated by an award. In the instant case an award was rendered prior to any question arising as to the validity of the proceedings. The law of Virginia, which controls this case, is clear that it is too late to insist upon the invalidity of the award after its rendition. Big Vein Po-

cahontas Co. v. Browning, 137 Va. 34, 120 S.E. 247; Corbin v. Adams, 76 Va. 58; Condon v. South Side R. Co., 14 Grat. 302, 55 Va. 302; Bernhard v. Jones, 156 Va. 476, 159 S.E. 82. The last cited case goes further in stating that where action by the arbitrators is a condition precedent to the right of any party to bring an action thereon, the award is not against public policy, and where valuable rights passed under the arbitration agreement and the arbitrators have commenced their work pursuant to the agreement, it is then too late to withdraw from the contract. Under the facts of this case, either of these exceptions would defeat the defendant's claim of invalidity.

■■ There is a further argument to sustain plaintiff's position. At common law there are two forms of submission to arbitration. A submission *in pais* is used in the absence of any pending suit where parties agree to submit their then existing controversies to arbitration. A submission made in a pending suit is sometimes adopted and, in such cases, the award is returnable to the court to be enforced by a rule after notice to show cause against it. By statute in Virginia, § 8–503, Code of Virginia, 1950, it is provided that parties, whether there be a suit pending or not, may submit to arbitration and agree that the submission may be entered of record in any court. Clearly the arbitration agreement in the present proceeding constitutes a submission *in pais*. There is no question of an appeal to any court and this provision, as well as that indicating that the award is "binding and conclusive", may be disregarded as surplusage. A proper proceeding in equity may always be used to attack a submission *in pais* if the proof demonstrates palpable error. The provision for arbitration may be complete in itself without regard to any stipulation as to its binding effect without the right of appeal. McCullough v. Clinch-Mitchell Const. Co., 8 Cir., 71 F.2d 17.

■ As heretofore indicated, to set aside an award of arbitration, the error must be palpable—the cause shown must be grave—it must be more than what is

required to set aside a jury verdict. 3 Am.Jur., "Arbitration and Award", §§ 137, 147, 148; Equitable Fire & Marine Ins. Co., Providence, R. I. v. Stieffens, 154 Va. 281, 153 S.E. 731. The mistake must concern a material matter, and courts will not set aside an award if the mistake is of a trifling nature and has had no effect on the justice of the award as a whole or the rights of the parties thereunder. 3 Am.Jur., § 148. Mere errors of judgment, either of law or fact, do not constitute a "mistake".

■ It is first contended that the Board was required to accept as correct a starting figure of $107,818.82, as of February 1, 1955, in determining the amount due by Janaf to Daniel, by reason of the language set forth in paragraph 3 of the contract letter of March 24, 1955. This position cannot be successfully maintained as the arbitration agreement was entered into more than four months thereafter; the figure stated in the contract letter was qualified by the word "approximately"; the evidence before the Board and the Court demonstrated that, at the time Daniel wrote the letter of March 24, 1955, its posting on its books was from thirty to sixty days in arrears; the Board, by the terms of the arbitration agreement, was required to "review Daniel's entire claim of $136,-328.86"; and, finally, while the Board disregarded the figure of $107,818.82, it merely determined that the contract of March 24, 1955, "controlled the operation between the parties" and, as was said, "we applied the formulas that were set out in the March 24, 1955, letter". Actually, the Board did review the entire claim and in light of the testimony indicating the arrearages in posting, it cannot be said that the Board erred in not accepting as a starting figure the aforesaid sum of $107,818.82.

■ It is next insisted that the Board disregarded the equities between the parties in arriving at its award. In conferring with its own counsel, the Board was advised that, in substance, the equities must yield to the contractual agreement as contained in the letter of March 24, 1955. The Board did, however, take into consideration certain equities in adjusting the interest on the balance of $43,993.92 from May 1, 1955, to September 1, 1956—a matter of interest at the rate of 5% per annum for a period of sixteen months aggregating $3,519.50. Only Janaf's arbitrator, Hill, advanced the thought that a fair consideration of the equities would have altered his decision. He testified that if the March 24, 1955, contract had not been binding on the parties, he would have called for all of the cost sheets in arriving at any actual loss that Janaf would have sustained and weighed them against whatever loss Daniel sustained. He first stated his opinion that both Daniel and Janaf were poorly organized and poorly directed, as a consequence of which he felt that there should be some consideration to Janaf. When his attention was called to the fact that a deduction for the benefit of Janaf would likewise call for a like deduction for the benefit of Daniel, he quickly conceded that such a consideration would have to be given to both parties. As the contract of March 24, 1955, correctly established the guideposts to be followed by the arbitrators, the Board's counsel was right in advising this body that the equities must yield to the express terms of the contract. Moreover, the award could have been rendered by any two arbitrators. Even if it be an error of judgment as to law (which is clearly refuted above), the arbitrators were given the authority to determine all questions of law and fact. Under a cost-plus contract such as in this case, no consideration is given to anything other than the cost items involved, unless the objecting party proves that the work was done in such ruthless disregard of the contractor's obligations as to be tantamount to fraud or gross negligence. Hitt v. Smallwood, 147 Va. 778, 133 S.E. 503. In computing the cost-plus agreement, the Board insisted upon crediting Janaf with all discounts allowable to Daniel. A review of all of the evidence leads to the inevitable conclusion that the Board fairly considered

such equities as were proper, and made due allowance for Janaf's interests. Certainly it is true that if the Board had accepted the figure of $107,818.82 as a starting figure, it would have disregarded its obligation to "review Daniel's entire claim", as such action would have foreclosed Janaf's right to dispute any amount found due in excess of $90,000, the amount which Janaf unconditionally agreed to pay.

As was said in City of Portsmouth v. Norfolk County, 31 Grat., Va., 727:

"If it is our duty to go over the whole ground and reverse wherever we think there is error in the award, it is obvious the parties might just as well have left their difficulties to be settled by the courts without the expense and trouble of an arbitration. On entering into the submission they well knew that questions of great difficulty would be passed upon by the arbitrators; that valuable interests in real and personal property would be adjudicated, and large amounts of money decreed. The submission was made with direct reference to these matters. If the City of Portsmouth has been made the sufferer, it is the result of her own deliberate action, and the courts have no power to interfere."

The Court concludes that there were no errors on the part of the Board which would justify setting aside the award.

Finally we approach the only serious question in the case which is whether the Board exceeded its authority as to certain minor items. The award reveals that the Board specifically included and mentioned four obligations due to Hall-Hodges Company, Inc., A. P. Smith Company, Tidewater Plywood Corporation and Johnson Linoleum & Tile Company. These four items aggregate the sum of $1,103.27. They were not a part of the original figure of $136,328.86 as set forth in the arbitration agreement for review by the Board. The evidence discloses that Janaf was originally supposed to pay for these items, but that Daniel was ultimately called upon to make payment subsequent to the date of the arbitration agreement. The testimony further reveals that, on the final day of argument by counsel before the Board, counsel for Janaf at first declined to permit consideration of same but finally relented and stated that the Board could include these items in any award to be rendered. Actually, the total award including these four items is within the reviewable figure as stated in the agreement. To send these parties to further litigation over such a trifling sum would not serve the ends of justice. If there was a technical error in including such items in the total award, it was invited by counsel for Janaf who was in charge of all such proceedings in behalf of his client before the Board. An attorney apparently granted the power to handle minor matters of procedure may waive his client's rights in the premises. Paramount Communities, Inc. v. Abramson, 183 Va. 922, 33 S.E.2d 771. Under any circumstances the award would not be invalid except as to the aforesaid $1,103.27, and no authority has been submitted indicating that the entire award must be set aside where the alleged excess authority is manifestly separable.

Holding that the plaintiff is entitled to the relief prayed for in said complaint, counsel for plaintiff will prepare an appropriate judgment order in accordance with this opinion, which is adopted by the Court in lieu of specific findings of fact and conclusions of law, and, after presentation to opposing counsel for inspection and endorsement, said order shall be transmitted to the Court for entry. The plaintiff is entitled to the funds on deposit in the Norfolk Federal Savings and Loan Association in the two accounts referred to in the complaint and evidence, same to be applied as a credit upon the judgment to be entered. Defendant is granted, at its option, a period of thirty days in which to make payment of the remaining balance due on said judgment prior to action by way of foreclosure. If an appeal is noted by defendant, the funds on deposit will remain in status quo and bond may be given for

such additional amount as may be required to satisfy the judgment, interest (including security for interest to accrue for nine months in advance) and costs, but the giving of such bond shall not authorize the release of the deed of trust on the remaining lot or lots.