# Richmond

## S. D. May, State Highway Commissioner, Etc. v. Earl S. Whitlow, Et Al.

January 18, 1960.

Record No. 5024.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Snead and I'Anson, JJ.

The opinion states the case.

*Francis C. Lee, Assistant Attorney General (A. S. Harrison, Jr., Attorney General; M. Ray Johnston, Assistant Attorney General* on brief), for the plaintiff in error.

*J. Segar Gravatt* and *W. E. Neblett,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

S. D. May, State Highway Commissioner of Virginia, hereinafter referred to as appellant, asks us to reverse an order of the trial court wherein a writ of mandamus was awarded directing and commanding him to acquire by purchase or condemnation, according to the statutes of the Commonwealth, so much of the land of appellees as was required for highway purposes, lying outside of a 30-foot public highway.

The case was instituted by the filing of separate petitions of thirteen landowners and their respective consorts, herein referred to as appellees, praying that commissioners be appointed by the court pursuant to § 33-75, Code of Virginia, 1950, to ascertain what would be just compensation for land taken from them for use as a public highway, and the damages resulting from such taking.

The lower court, overruling a motion of appellant to reject the petitions for lack of jurisdiction, ordered them to be filed. It appearing that the pleadings and issues in each of the petitions were identical, they were consolidated and ordered to be heard together. The court then sustained the contention of appellant that the petitions could not be entertained under Code, § 33-75; but, over appellant's objection, granted appellees leave to amend their prayer to a request for a writ of mandamus to compel appellant to institute condemnation proceedings against them. The petitions were amended accordingly and filed.

Without making any further objection to the jurisdiction of the court, appellant answered, denying that he had made any entry upon the property of appellees, or that any portion of the highway had been constructed upon property belonging to them. He further averred that the property in controversy had been, by virtue of two plats hereinafter mentioned, dedicated and accepted by the public for public travel, and had been so used for many years.

At the hearing all matters of fact were, by agreement of council,

submitted to the judge upon evidence heard *ore tenus*. The primary and controlling issue was the correct width of the public highway in front of appellees' lands.

In 1957, the State Highway Commission of Virginia began the reconstruction of combined State Highway Routes Numbers 40 and 49, as a 60-foot wide public way, beginning at a point lying outside the Town of Victoria, and extending in a westwardly direction toward Lunenburg Court House. In 1909, the highway above mentioned was a county road with a width of 30 feet, known as Court House Road. It ran between a tract of land on its north side owned by T. D. Bragg, and a tract on its southerly side owned by E. J. Flippo.

In 1909, Bragg had a portion of his property surveyed and a plat made showing a subdivision thereof into lots, streets and avenues. This plat, bearing the legend: "Plat Bragg Residence Site, Victoria, Virginia. 8-25-09. J. E. Crafton, Engineer and Surveyor," was placed on record in the Clerk's Office of Lunenburg County by pasting it in Deed Book 54 at page 496. A second plat, purporting to describe the same subdivision, signed "J. E. Crafton, Engineer and Surveyor," and bearing the notation: "Bragg Residence Site, Victoria, Virginia. All lots 50'x200' except those specified. J. E. Crafton, Jr., Engineer and Surveyor. November 22, 1910," was subsequently recorded by pasting it in Deed Book 55, at page 382. Neither plat contained any statement, acknowledgement, or other writing or the signature of the landowner.

These two plats show the subdivision of Bragg as bounded on its southerly side by a 60-foot road, the old Court House Road, renamed Court Street.

A plat of the subdivision of Flippo's farm, dated February 26, 1919, and recorded in the Clerk's Office of Lunenburg County, shows his land, opposite that of the above land of Bragg, as bounded by Court House Road on the north; but the width of the road is not specified.

The Bragg plats are in hopeless conflict in many respects, the later showing almost a complete revision of the first, with eliminations and additions. The streets and avenues on the 1909 plat showed a width of 60 feet; whereas, the 1910 plat gave the width of all streets and avenues as 50 feet, except Court Street. According to the 1909 plat, the angles of the lots and blocks run obliquely to Court Street.

while according to the 1910 plat they are perpendicular to that street. Lots numbered 11 and 12 in Blocks 1 and 2 are eliminated on the 1910 plat. A "Reserved" area on the 1909 plat is shown as Blocks 3 and 4 on the 1910 plat. A complete addition of 12 blocks was added to the latter plat along Court Street.

Appellees, or their predecessors in title, purchased their property between 1910 and 1912 from T. D. Bragg by lot numbers designated on the 1910 plat, except one who purchased in 1909, according to the 1909 plat. However, in their chain of title there were two deeds in 1912 which did refer to the 1909 plat. The lots, streets, and avenues on the 1910 plat are defined by corner stakes, markers and monuments, which were identified by several witnesses and by a civil engineer who made a survey of the subdivision in 1956. All of the lots of appellees front on Court Street which bounded it on the south. If their lots are laid off, in accordance with the plat, as having a depth of 200 feet, they extend nearly to the northerly line of the 30-foot wide old county road.

Appellees, or their predecessors, promptly took possession of the land purchased by them, built homes thereon, and erected fences, in accordance with the 1910 plat and the cedar stakes which were placed at the corners of the lots when the 1910 survey was made. They planted hedges, trees, ornamental shrubbery, and otherwise used and enjoyed all of the area north of the 30-foot wide old Court House Road, the northerly boundary of the Flippo land, so as to leave no land available for highway purposes beyond the original 30-foot easement. They held undisputed possession for about 45 years, until 1957, when appellant first asserted claim to a 60-foot wide right of way.

There is no evidence that the county or State, or any public authority did any act prior to 1957, express or implied, with reference to the widening of the old 30-foot wide county road, known as Court Street, which was different from what they did before the recordation of the two plats. The authorities merely continued to maintain the 30-foot road as it had been for 60 years or more. There is no evidence whatever that the Board of Supervisors of Lunenburg County ever authorized or accepted any greater width than 30 feet, the width permitted by law at the time of the recordation of the plats, and for many years thereafter. This is significant in view of the statutes in effect throughout the period involved, and which will be hereinafter cited.

In a written memorandum of opinion, the learned judge of the trial court held that the Bragg plats of 1909 and 1910 were sufficient to constitute a common law dedication, or offer of dedication, of 45 feet of the Bragg land, which with 15 feet from the Flippo land on the south, made a 60-foot right of way. *Paramount Communities, Inc., et als.* v. *Abramson,* 183 Va. 922, 33 S. E. 2d 771; Annotation, Common Law Dedications, 63 A. L. R. 670. There was no exception to this ruling, and no assignments of error have been made with respect thereto.

The judge further held that it was established that the county and the State accepted only a 30-foot right of way, that is, 15 feet of the Flippo land and 15 feet of the Bragg land, and maintained only this clearly defined 30-foot right of way until 1957, and that appellees, acting in the light of these facts, withdrew and revoked by their conduct the offer of dedication of the land north of that right of way.

Except for the question of jurisdiction, the only question here presented is whether the trial court erred in holding that the public authorities had only accepted a public right of way 30 feet wide, of which 15 feet on the northerly side came from the land of T. D. Bragg, the predecessor in title of appellees, and the remaining 15 feet on the southerly side came from land now or formerly belonging to E. J. Flippo.

The two questions will be considered in the above order.

A writ of mandamus is an extraordinary remedial process. It lies to compel performance of a ministerial act by a public official only when there is a clear and unequivocal duty imposed by law upon the officer to perform the act. The absence of another adequate remedy at law is essential to its application. *Page* v. *Clopton,* 71 Va. (30 Gratt.) 415, 417; *Richmond-Greyhound Lines* v. *Davis,* 200 Va. 147, 152, 104 S. E. 2d 813; 55 C. J. S., Mandamus, § 51, pages 87, 88.

In *Wilson* v. *State Highway Commissioner,* 174 Va. 82, 4 S. E. 2d 746, we said that a landowner might employ mandamus to compel the State Highway Commissioner to institute new condemnation proceedings where the landowner had suffered increased damages on account of a change in the plans and specifications used in a former condemnation proceeding, or where more land was taken than that considered in such former proceeding. 174 Va., page 93.

In *Hicks* v. *Anderson,* 182 Va. 195, 198, 28 S. E. 2d 629, we held

that mandamus was permissible to compel the State Highway Commissioner to institute condemnation proceedings where land of the petitioner was damaged by increased water flow and soil deposits cast upon it by reason of the relocation of a public highway, since there was no other way the landowner could enforce his right to compensation.

In the case of *Childers, et al.* v. *State Road Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611, where the facts were somewhat similar to those in the case before us, the court recognized mandamus as an appropriate alternative procedure.

Here, appellant, in effect, waived his objection to the procedure by the course which he pursued. He answered the amended petitions, without filing further objections to the procedure, or to the jurisdiction; and joined in the issue as to the width of the highway, thereby submitting himself to the jurisdiction of the court, permitting it to promptly determine the merits of the principal question in controversy.

Appellant concedes in his brief, and in his argument at the bar of this Court, that "the issue was fairly joined, and that the interests and rights of the State Highway Commission were protected in the same degree throughout the proceedings as could have been expected in a declaratory judgment proceeding, in an injunction case, or in any other proceeding less harsh or less extraordinary than in a suit for mandamus." The procedure followed was such as to enable the court to pass on the merits of the controversy and dispose of it as justice and equity required.

While technically and strictly mandamus was not a proper remedy to try the issue of ownership of the land, yet in view of the particular facts and circumstances of this case, the objection to it should not be sustained. Its use here resulted in the real issue between the parties, that is, the right of appellees to compel the State Highway Commissioner to institute condemnation proceedings against them, being fully developed and decided. No prejudice was suffered by any party, and harm rather than good would result from sending the parties back to try the same issue, to be raised by different pleadings. The court had jurisdiction over the parties and over the subject matter, and the selection of the proper remedy was only a question of procedure.

We come now to the merits.

It is settled law that until a dedication is accepted by, or for the public, it is a mere offer, which may be withdrawn at any time, if no private interests have been acquired on the faith of the dedication. *City of Norfolk* v. *Nottingham*, 96 Va. 34, 30 S. E. 444; *City of Danville* v. *Anderson*, 189 Va. 662, 53 S. E. 2d 793.

To constitute a valid dedication, there must not only be an intention on the part of the owner to dedicate the land; but it is absolutely essential that there be an acceptance, express or implied, on the part of the public. When completed, it is irrevocable. *Buntin* v. *Danville*, 93 Va. 200, 204, 24 S. E. 830.

"Until the dedication has been accepted for the public, the dedicator or those claiming under him may revoke or abandon the dedication by consent of the State or municipality, and such abandonment may be established in *pais* by long non-user and enjoyment of the same, without claim on the part of the municipality." *Payne* v. *Godwin*, 147 Va. 1019, 1027, 1028, 133 S. E. 481. *Town of Glasgow* v. *Mathews*, 106 Va. 14, 54 S. E. 991; *Scott* v. *Moore*, 98 Va. 668, 687, 37 S. E. 342, 81 Am. St. Rep. 749; *City of Danville*, v. *Anderson*, *supra*, 189 Va. 662; *City of Staunton* v. *Augusta Corporation*, 169 Va. 424, 193 S. E. 695.

In *Bare* v. *Williams*, 101 Va. 800, 803, 45 S. E. 331, Judge Whittle said:

"It is settled law that public highways should be matters of public record, and identified with such reasonable certainty as to apprise the public of their location, and supply them with the means of knowing to what extent they may travel along them without becoming trespassers; and also to make known to individuals how much and what part of their lands have been appropriated to public use. * * *"

Section 946 of the Code of 1887 provided:

"Every road shall be 30 feet wide, * * * unless the county court order a different width."

This section was amended by an Act of the General Assembly of 1906, page 551, and an Act of 1908, page 408, and became section 1977 of the 1919 Code, in effect at the time the plats in question were recorded.

Section 1977 of the Code of 1919 provided:

"The right of way for any public road shall be 30 feet wide * * * unless the Board of Supervisors order a different width."

This section was further amended by Acts of the General Assembly

1928, page 569, and in 1938, page 129, and thereafter became section 2039 (2) of Michie's Code, 1942, and provided:

"(S)uch Board (Board of Supervisors) may establish or alter such road * * * and of such width.* * * as it may prescribe; but the right of way for any such public road shall not be less than 30 feet wide * * * and the grade of no road hereafter located shall exceed four degrees at any point, unless the Board of Supervisors order a greater width or different grade."

The statute is substantially the same as section 33-142 of the Code of 1950.

It is manifest, in view of the above facts, that the action of the public authorities in the maintenance of the old county road as having a width of 30 feet cannot be enlarged into an acceptance of a dedication of an extension beyond 30 feet in violation of the statutes quoted. The circumstances tend to establish that no part of the right of way in excess of a width of 30 feet was accepted by the public, and that the public authorities long ago relinquished and abandoned any claim to the area claimed by appellees. *City of Danville* v. *Anderson, supra,* 189 Va.

Paraphrasing the language in *City of Danville* v. *Anderson,* 189 Va., *supra,* page 670, this may be said:

No assertion of right by the public to any width greater than 30 feet was ever made until 1957. The property owners along the road were freely allowed to continue to assert claim to all of the area outside of the 30 feet width, and that they did assert and exercise such claim is fully established by landmarks defining their property, and their actions with respect thereto, without opposition from anyone. Appellees were told that they were entitled to lots 200 feet in length, were shown the markings of the lots, they built their fences accordingly, and thereafter acted in the light of what the public accepted.

The continuous failure of the public authorities to open and maintain Court Street for a width of 60 feet, and the systematic diversion of the land north of the 30-foot right of way to uses foreign to the dedication, unmistakably point to a non-acceptance of the offer of Bragg to dedicate the area in controversy. *City of Staunton* v. *Augusta Corporation, supra,* 169 Va.

There is nothing in the record to show that other lot owners in the Bragg subdivision exercised any rights adverse to appellees, that

they claim to be prejudiced by reliance upon the recorded plats, or have any other complaint. Certainly none has been asserted in this proceeding.

The judgment of the trial court on the facts is final and binding upon us. Those facts support its determination of the issues presented. For these reasons, the order complained of is affirmed.

*Affirmed.*