**David GRAHAM, Jr., Plaintiff,**

v.

**James P. MITCHELL, Warden; Ed Cummins, Correctional Officer; and Sgt. R. Adams, OIC, Property Division, Defendants.**

**Civ. A. No. 81–48–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Jan. 15, 1982.

David Graham, Jr., pro se.

Alan Katz, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM ORDER

KELLAM, Senior District Judge.

David Graham, Jr., a Virginia prison inmate, asserted that Mitchell and other correctional personnel negligently caused the loss of a watch Graham had ordered by mail, and thus deprived him of property without due process of law in contravention of the Fourteenth Amendment. Graham appealed this Court's dismissal of his action filed pursuant to 42 U.S.C. § 1983. The Fourth Circuit remanded the case in light of the Supreme Court decision of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that if a state provides a remedy for property loss which satisfies the requirements of procedural due process, an inmate has not stated a claim of constitutional magnitude cognizable under 42 U.S.C. § 1983. The Fourth Circuit directed this Court to consider "whether the state provides a remedy for the property loss Graham asserts and, if so, whether the remedy provided satisfies procedural due process requirements." *Graham v. Mitchell,* 672 F.2d 909 (4th Cir. 1981).

■ As the Supreme Court correctly pointed out in *Parratt, supra,* nothing in the Fourteenth Amendment protects against all deprivations of property by a state. Rather, "the Fourteenth Amendment protects only against deprivations 'without due process of law.'" *Id.* at 1913. In deciding whether Virginia tort remedies provide a means of redress for property deprivation that satisfies procedural due process requirements, it is important to note that the Supreme Court has recognized that such requirements can be satisfied by postdeprivation remedies made available by a state. *Id.* at 1914.[1] *See, e.g., North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908). In fact, the Supreme Court in *Parratt, supra,* at 1916, admitted that it is practically impossible for a state to provide a meaningful hearing before the deprivation takes place since the loss of property, while attributable to a state as action "under color of law," is usually always beyond the control of a state. That, of course, does not mean that a state can take property without providing a meaningful postdeprivation hearing. However, for such a postdeprivation hearing to be meaningful in the context of satisfying the fundamental requirements of due process, it must provide an opportunity to be heard at a meaningful time and in a meaningful manner on the issues of rights and liabilities.[2] *Id.* at 1915.

In *Parratt,* the statute involved was Neb. Rev.Stat. § 81–8, 209 *et seq.* (Reissue 1976), which provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State. Through this tort claims procedure the State hears and pays claims of prisoners housed in its prisons. It was held that the remedies under the statute were sufficient to satisfy the requirements of due process. *Id.* at 1917.

■ In Virginia, the Virginia Tort Claims Act (the Act) has been enacted by the General Assembly and is to become effective July 1, 1982. *See* Va.Code § 8.01–195.1 *et seq.* (Repl.Vol.1981). The Act means that the State is liable for damages in certain cases. § 8.01–195.3 reads in part as follows:

> Subject to the provisions of this article, the Commonwealth shall be liable for claims for money only accruing on or after July one, nineteen hundred eighty-two, on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any State employee while acting within the scope of his employment under circumstances where the Commonwealth, if a private person, would be liable to the claimant for such damage, loss, injury or death; provided, however, that the Commonwealth shall not be liable for interest prior to judgment or for punitive damages, nor shall the amount recoverable by any claimant exceed twenty-five thousand dollars, or the maximum limits of any liability policy maintained to insure against such negligence or other tort, if such policy is in force at the time of the act or omission complained of, whichever is greater, exclusive of interest and costs.

However, since the Act does not go into effect until July 1, 1982, and since claims based upon acts or omissions which occurred prior to July 1, 1982 are excluded, a deter-

---

1. [We] recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process.
   *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981).

2. However, as many ... cases recognize, we have rejected the proposition that "at a meaningful time and in a meaningful manner" *always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a State authorized procedure, and the assumption that at some time a full and meaningful hearing will be available.
   *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). (Emphasis in original).

mination of whether the Act satisfies the due process requirements is not the issue in the case at bar. What must be decided is whether the availability of Graham's right to sue prison personnel for negligence in a State court satisfies due process. The opinion of the Court is that the answer is in the affirmative.

■ Graham's State court remedies were at all times available to him. In fact, the State court remedies still exist as the alleged negligence occurred in 1980, thus, within the five year statute of limitations period for injury to property. *See* Va.Code § 8.01–243. That State remedies are adequate is supported by the case of *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), which was cited in *Parratt, supra*, at 1917. *Ingraham* confronted the Supreme Court with the claim that corporal punishment in schools violated due process. The *Parratt* decision noted that, arguably, the facts in *Ingraham* were more "egregious" than the facts in *Parratt* because the Supreme Court was faced with an intentional act (rather than negligent conduct) and a deprivation of liberty. Nonetheless, the Supreme Court in *Ingraham* reasoned:

> " 'At some point the benefit of an additional safeguard to the individual affected ... and to society in terms of increased assurance that the action is just may be outweighed by the cost.' *Mathews v. Eldridge*, [424] U.S. [319], at 348 [96 S.Ct. 893, at 909, 47 L.Ed.2d 18]. We think that point has been reached in this case. In view of the low incidence of abuse, the openness of our schools, *and the common-law safeguards that already exist*, the risk of error that may result in violation of a school child's subsequent rights can only be regarded as minimal."

*Ingraham v. Wright*, 430 U.S. at 682, 97 S.Ct. at 1418, cited with approval in *Parratt, supra*, at 1916 (Emphasis supplied in *Parratt*). It is significant that the Court in *Parratt* stressed the common-law safeguards available. Such emphasis indicates that while specific state statutory remedies, such as those provided in Nebraska, can be sufficient to meet due process requirements, a common-law action in a state court can also suffice.

The Constitution of the State of Virginia, Article I, Section 11 provides that "no person shall be deprived of his life, liberty or property without due process of law ...." [3] The Article further prohibits the General Assembly from passing any law whereby private property may be taken or damaged for public uses, without just compensation.

■ Not only is there a common-law right for recovery of damages for taking of property without due process, there is a right of action for damages under the State Constitution. The courts of the State have made it plain that this provision of the Constitution means that a person is entitled to notice and opportunity to be heard before an impartial tribunal before any binding order can be made affecting his right to property. *See Commission of Fisheries v. Hampton Roads Oyster Packers & Planters Ass'n*, 109 Va. 565, 64 S.E. 1041 (1909); *Kennedy Coal Corp. v. Buckhorn Coal Corp.*, 140 Va. 37, 124 S.E. 482 (1924); *May v. Whitlow*, 201 Va. 533, 111 S.E.2d 804 (1960).

It seems clear that the provisions of the Constitution of Virginia provide due process protection of one who has been unlawfully or improperly deprived of his property, whether real of personal, and he "may enforce his constitutional right to compensation in a common law action." *Burns v. Board of Supervisors of Fairfax County*, 218 Va. 625, 238 S.E.2d 823 at 825 (1977); *Heldt v. Elizabeth River Tunnel District*, 196 Va. 477, 84 S.E.2d 511 (1954); *Morris v. Elizabeth River Tunnel District*, 203 Va. 196, 123 S.E.2d 398 (1962).

■ The common law remains in force in the State of Virginia, except where changed by statute or the Constitution. *Swift & Co. v. City of Newport News*, 105 Va. 108, 52 S.E. 821 (1906); Va.Code § 1–10. Even where there is no specific statute authorizing such an action, "the

---

3. This language is almost identical to that of the Fourteenth Amendment of the United States Constitution.

common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance." *Swift & Co. v. City of Newport News, supra*, at 52 S.E. 824.

This Court is not persuaded by possible contentions that there exist impediments sufficient to prevent Graham from receiving a meaningful postdeprivation hearing that is faithful to the Fourteenth Amendment. The Virginia Supreme Court recently held that a convict can proceed with an action without the appointment of a committee, as he is free to waive the appointment of a committee, if he so desires. *Cross v. Sundin*, 222 Va. 37, 278 S.E.2d 805 (1981). Also, Va.Code § 14.1–183 allows indigent prisoners to proceed *in forma pauperis* and to have counsel appointed under certain circumstances.

In *Parratt*, the Supreme Court considered the arguments that Nebraska did not adequately protect the prisoner's interests because it provided only for an action against the State as opposed to its individual employees, it contained no provision for punitive damages, and there was no right to a trial by jury.[4] Rejecting these arguments, the Court reasoned at 101 S.Ct. 1917:

> Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

In the case at bar, Graham's available State court remedies could fully compensate him and, therefore, the Court finds that adequate due process exists. To hold otherwise would be to distort and to trivialize the meaning and intent of the Constitution.[5]

Accordingly, it is hereby ORDERED that Graham's claim be DISMISSED.

Copies of this Order are forwarded to Graham and to Alan Katz, Assistant Attorney General of Virginia.

---

4. The Virginia Constitution provides for trial by jury in actions at common law.

5. Our decision today is fully consistent with our prior cases. To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405. We do not think that the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society.
*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).