# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

James L. Carver

    v.

Spotsylvania County
Board of Supervisors
and Larry K. Pritchett

June 23, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

Carver filed a petition on June 12, 1987, seeking a writ of mandamus to compel the Board and its agent, Pritchett, to process his application for water and sewer connections. The respondents filed a demurrer and agreed to an expedited hearing on the issues raised in that pleading, which was held on June 22, 1987. Counsel then filed memoranda of law and citations of authorities.

The court is called upon to determine matters raised on demurrer. Therefore, all factual allegations contained in the petition are accepted as true, for purposes of this opinion, and the recitations herein are those asserted by the petitioner in his pleading.

On June 9, 1987, the Board adopted an "emergency ordinance" by which water and sewer availability fees were increased, effective immediately.

On June 11, 1987, Carver applied for water and sewer connections for property which he owns in Wilburn Farms, a Spotsylvania County subdivision. With his application, he tendered payment equal to the amount charged under the old ordinance. Pritchett, the Board's agent for such matters, refused to accept Carver's check and refused to issue, or grant, the connections because the amount tendered was less than the amount established in the "emergency ordinance."

Rather than pay the increased charge, Carver filed this petition.

"The modern writ of mandamus may be defined as a command issuing from a common law court of competent jurisdiction, in the name of the State or sovereign, directed to some corporation, officer or inferior court, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law." And to warrant the issuance of the writ it must appear that it is within the power of the defendant, as well as his duty, to do the act in question. *Board of Supervisors v. Combs*, 160 Va. 487, 493 (1933).

A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. . . . In doubtful cases, the writ will be denied, but where the right involved and the duty sought to be enforced are clear and certain and where there is no other available specific and adequate remedy the writ will issue. It will not lie where it would serve no useful purpose or where it would work an injustice or hardship or be harmful to the public interest. . . .

Mandamus will issue to compel public officers to execute their purely ministerial duties under the law, but where the public officer or board is vested with a discretion or judgment, their actions cannot be controlled or reviewed by mandamus in the absence of statute providing therefor. . . . *Richmond-Greyhound Lines v. Davis*, 200 Va. 147, 151-152 (1958).

The function of a trial court in a mandamus proceeding "is to command and execute, and not to inquire or adjudicate." *R. F. & P. Railroad Company v. Fugate*, 206 Va. 159, 164 (1965).

"Before the writ may properly issue, at least three elements must coexist: (1). The existence of a clear right in plaintiff or the relator to the relief sought. . . . (2) The existence of a legal duty on the part of respondent or defendant to do the thing which the relator seeks to compel. . . . (3) The absence of another adequate remedy at law. . . and, although the coexistence of these elements, standing alone, will not always suffice to justify the issuance of the writ, in the discretion of the court, the absence of either of these elements will make the issuance of the writ invalid." *Richmond-Greyhound Lines v. Davis, supra* at 152.

The respondents contend that the essence and substance of Carver's petition is to question the validity of the "emergency ordinance." This, they argue, is not a proper function of a mandamus proceeding. Among other things, the respondents also argue that Carver has other adequate remedies to accomplish this objective.

In order to test the merits of the respondents' contentions, a sequence of inquiries must be reviewed.

First: What is the ministerial, non-discretionary act which the petitioner seeks to compel? It is the issuance of water and sewer connections for property owned by Carver and for which Carver has filed an application.

Second: Does the performance of that act involve the exercise of discretion or judgment on the part of the public official or board? No. The issuance of water and sewer connections is a purely ministerial duty, to be performed upon receipt of an application and payment of the fees provided by law. Those persons who administer the water and sewer ordinances of the County do so in obedience to the mandate of the ordinance without regard to their own judgment about the propriety of the act being done.

In this case, however, the "fees provided by law" were not tendered. Carver's payment was for an amount equal only to the charges under the old (i.e., pre-June 9, 1987) ordinance. Consequently, one of the prerequisites for performing the ministerial duty did not exist.

Carver asserts that the "emergency ordinance" is invalid, and, therefore, he did tender the appropriate fees, as a result of which the respondents were required by law to issue the connections--a purely ministerial duty.

Third: Under the foregoing circumstances, did the respondents have a duty to grant the connections? Obviously, the answer to that question depends upon the validity of the "emergency ordinance." This, then, brings us to the heart of the matter.

Carver argues that the validity of the ordinance can be raised in a mandamus proceeding. He cites authority for the view--apparently the prevailing view--that the court "should entertain and dispose of such a question when it is properly and timely raised by one who is entitled to interpose it." 52 Am. Jur. 2d, *Mandamus* §§ 94 & 95. He also cites two Virginia cases.

In *Danville v. Blackwell*, 80 Va. 38 (1885), the Court issued a writ to compel a trial judge to perform an act (i.e., removal of a cause to another court) which was "plain" and "imperative" by "express statute."

In *Richmond Funeral Directors' Association v. Groth*, 202 Va. 792 (1961), the Court issued a writ to compel Richmond's director of public safety to carry out the mandate of a City ordinance (i.e., the promulgation of certain parking regulations) which was "clear" and "plain."

There are several distinctions between the case at bar and those cited by Carver.

Admittedly, in both Virginia cases relied upon by the petitioner, the Court had to address the validity of a statute (in *Blackwell*) or an ordinance (in *Groth*) in order to determine whether the respondent had a duty to perform the act sought to be compelled. However, in neither of those cases was the Court called upon to *interpret* or *construe* legislation, and in neither of those cases was the Court required by the nature of the controversy to take evidence and to make factual adjudications. As explained hereinbelow, this court is of the opinion that these distinctions are significant in a determination of the propriety of a mandamus proceeding.

As the Virginia Supreme Court has repeatedly stated, the function of the trial court in a mandamus proceeding is to *command and execute*, and *not to inquire and adjudi-*

*cate. See, e.g., R. F. & P. Railroad Company v. Fugate, supra.*

Where the statute or ordinance under which the official is supposed to act is clear, plain, and expressly mandatory by its terms, there is little or no inquiry required. The mandamus court can read the law and apply it to the facts of the case. In none of the reported Virginia cases · in which mandamus issued was the court drawn into contested interpretations of the statute or ordinance in question.

It is clear from representations of counsel that in this case the court will be called upon to take evidence and to make factual determinations respecting the legality of the procedure by which the Board adopted the ordinance and the validity of the ordinance itself. For instance, one issue will be whether an "emergency" actually exists. Thus, the court will be required to look far beyond the pleadings, which "shall state plainly and concisely the grounds of the application" (Va. Code § 8.01-645), and legal arguments of counsel. Witnesses will be summoned. Documents will be proffered. Evidentiary rulings and factual determinations will be essential.

A review of the petitioner's eight-part Request for Production of Documents illustrates the type of proceeding which the petitioner envisions, and confirms this court's opinion that this proceeding, involving an extraordinary common law writ, will be perforce an "inquiry and adjudication" rather than a "command and execution." The sort of factual evidence which the petitioner seeks to discover, obviously for the purpose of using such documents at an evidentiary trial of the case, shows clearly that this case involves no "clear and unequivocal duty imposed by law upon the officer to perform the act," *May v. Whitlow*, 201 Va. 533 (1960).

The court expresses no opinion as to whether Part Four of the Rules of Court are applicable to this proceeding. *See*, however, Rule 4:0(a).

Virginia Code § 8.01-653 expressly grants authority to the Virginia Supreme Court, in certain cases involving the interpretation of acts of the General Assembly which appropriate or direct the payment of money out of the State Treasury, to adjudicate such questions by mandamus filed by the Attorney General. A reading of the cases brought under that statute, however, illustrates that

even in such proceedings where express authority is granted to a court pertaining to the interpretation of legislation, the questions are presented on written brief and the proceedings do not, by their extraordinary nature, draw the court into lengthy evidentiary hearings and factual determinations.

Further, the petitioner has other appropriate and adequate remedies at law. In fact, Virginia Code § 8.01-184 specifically provides that declaratory judgement actions are available to determine "controversies involving the interpretation of. . . statutes, municipal ordinances and other governmental regulations . . . ."

For the foregoing reasons, the court is of the opinion that mandamus is not the proper vehicle to challenge the refusal of water and sewer connections where, as here, (1) the essence of the case is to challenge the validity of an ordinance under which the official acted or declined to act, (2) the court will be drawn into a lengthy, contested and adversarial "inquiry and adjudication" involving factual determinations as well as questions of law, and (3) there are other appropriate and adequate remedies available.

The demurrer will be sustained and the writ denied.